129 N.J. Super. 562 (1974)
324 A.2d 131
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOHN TEARE, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division.
May 28, 1974.
Minish and Dooley, Esqs., attorney for the defendant (Mr. George J. Minish on the brief).
Mr. Joseph P. Lordi, Essex County Prosecutor, attorney for the plaintiff (Mr. Nicholas Turco).
LEOPIZZI, J.D.C., Temporarily Assigned.
This case comes to the County Court on a motion to suppress the results *563 of a breathalyzer test taken pursuant to an arrest under N.J.S.A. 39:4-50 et seq. in the Borough of Verona on January 24, 1974 at 1:25 A.M. Defendant John Teare is a New York State licensed driver and was initially stopped for going through a stop sign. He was given a single breathalyzer test with his consent a short time after his arrest. The reading on the meter was .20, which would be prima facie evidence of a violation of N.J.S.A. 39:4-50(a).
Approximately one month after this arrest defense counsel contacted the municipal prosecutor by telephone to ask to examine the test ampule used in the breathalyzer test of the defendant. Several days later a letter dated February 28, 1974 was sent by defense counsel to the municipal prosecutor confirming their previous conversation. Defense counsel was informed both by telephone and by letter that the test ampule of defendant had been destroyed in accordance with the routine established by the State Police.
Two motions are now presented to the court. The first is that the complaint against defendant should be dismissed because of the State's failure to produce material evidence. The second motion is made in the alternative and seeks the suppression of the results of the breathalyzer.
The grounds upon which these two motions are based, a request by defense counsel to examine the test ampule of a breathalyzer test, is unique in this State so far as this court is able to ascertain.
An eminently qualified expert with a doctorate in chemistry was produced by defendant at the hearing of these motions. A brief recitation of the findings of fact of the expert's testimony is necessary. I find as a fact:
1. The exact volume of the ampule is critical to the accuracy of the test and the exact volume can later be determined by independent test of the ampule.
2. The alcoholic content of the ampule is converted into acetic acid by a chemical reaction.
*564 3. The amount of acetic acid can later be determined by means of a chemical procedure known as Vapor Phase Chromatography (VPC).
4. By means of VPC a qualitative and quantitative analysis of the contents of the ampule can be later determined.
5. By determining the amount of acetic acid in an ampule the amount of blood alcohol in the person tested can later be determined.
6. In order to prevent deterioration of the contents of a test ampule for later examination, it should be stored in an amber-colored bottle to prevent light from entering, and tightly capped to prevent oxidation.
7. If properly stored, the contents of a test ampule would not deteriorate within a reasonable period of time.
8. Because the test reading of the breathalyzer is made shortly after the ampule is breathed into, the chemical reaction of alcohol to acetic acid has not been fully completed at the time of the test reading. A reading or other test taken at a later time would be likely to have a slightly higher reading. Therefore, if the later test were to show a result less than or equal to the test conducted by the police officer, this second test result would at least rebut the prima facie presumption raised by the breathalyzer test.
9. The amount of sulphuric acid in the ampule is critical to the accuracy of the test and this amount can later be determined.
10. Because breathalyzer apparatus can be calibrated to correct itself for certain inaccuracies in the ampules, an expert would need both the test ampule and the reference ampule at a later examination to be certain that the breathalyzer test was accurate.
This court makes a further finding which is based upon logic. That is, if an error had in fact been made by the police in the breathalyzer test and if defendant had available to him both the test ampule and the reference ampule, then these ampules might be of significant benefit to a defense. With so many factors concerning the qualitative and quantitative *565 contents of the ampules critical to the accuracy of the test, a defendant has no way of authenticating the fact that the particular ampule used in his test was properly composed. At the present time all defendant has is the assurance that the ampules with the same batch number met certain standards at the time they were packaged. If a slight defect in a single ampule of a batch did affect its light transmissibilty, chances are no one would ever learn of it. Clearly, an important avenue of cross-examination on the test would be closed to defendant. Therefore, the State's failure to produce this evidence, albeit without willfulness, is prejudicial to defendant and a denial of due process. The fact that a breathalyzer test provides prima facie evidence of guilt makes the safeguard of a follow-up test all the more important.
Justice and a sense of fair play dictate that the results of the breathalyzer test should be suppressed. However, absent willful destruction or secretion of evidence by the State, dismissal of the complaint is inappropriate. The defense has not shown how its case would be prejudiced by the destruction of the ampules if the results of the breathalyzer test were suppressed and independent evidence of driving while impaired or under the influence was produced.
The court notes with approval the case of People v. Hitch, 113 Cal. Rptr. 158, 520 P.2d 974 (Sup. Ct. 1974), where the court considered the same questions as those considered herein when dealing with California's breathalyzer statute, which is very similar to that of New Jersey. The Supreme Court of California in a unanimous decision has reached the same conclusion as has this court and has suppressed the results of the breathalyzer test but did not dismiss the complaint. While the California opinion is not binding on this court, it certainly is persuasive of the issues of due process and fair play. This court sees no undue burden on the State in being required to keep the ampules in an undeteriorated condition until the time for trial set forth in the complaint. Failure of the defendant to make such an *566 application within the above-stated time will be construed as a waiver of his right to make such a request.
Motion to dismiss the complaint against the defendant is denied. Motion to suppress the results of the breathalyzer is granted.