133 N.J. Super. 369 (1974)
336 A.2d 511
STATE OF NEW JERSEY, PLAINTIFF,
v.
SALLY L. BRYAN, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 15, 1974.
*370 Mr. Robert D. Campbell for defendant (Messrs. Kolodziej and Cohan, attorneys).
Mr. George Ciszak of the Attorney General's Office for plaintiff.
YACCARINO, J.S.C.
This matter comes before the court on an application by defendant to suppress the results of a breathalyzer test on the ground that the test ampoule used in the test administered to her is no longer available for rechecking by her own expert.
The salient facts are as follows. On April 22, 1974 defendant was arrested in Wall Township for suspected drunk driving. She was requested to submit to a breathalyzer test, to which she consented. She was given the appropriate warning regarding her right to have independent testing by a person of her choosing. She voluntarily submitted to the test. The ampoule used in the test was subsequently discarded pursant to department regulations. The *371 parties stipulated that the machine was in proper working order, that the test was properly administered, and that the operator was duly qualified. Defendant offered no testimony on her own behalf but relied solely upon the decision rendered by the court in State v. Teare, 129 N.J. Super. 562 (Cty. Ct. 1974). In that case defendant produced a chemist who testified to a theory which he concluded could enable the chemical testing of the contents of the test ampoule to verify the accuracy of the test results.
At the hearing in the present case the State produced Richard Saferstein. The witness testified that he earned a Bachelor of Science degree in Chemistry in 1963, a Master of Science degree in Chemistry in 1967, and was awarded a Ph.D. in Organic Chemistry in 1970, and that he was presently chief forensic chemist at the New Jersey State Police Forensic Science Bureau. His prior employment in forensic chemistry included service in the United States Treasury Department from 1964 to 1969. From 1969 through 1970 he was an analytic chemist with the Shell Chemical Company, and from 1970 to the present he has served as chief chemist at the State Police Laboratories. The witness testified that he was very familiar with the testing device commonly referred to as the breathalyzer. He stated that once the test ampoule was removed from the testing machine, there was no known way of reinserting the ampoule in the same position and that such a reinsertion would affect subsequent readings because of the concept of refraction. He stated, further, that there was no substance to the theory that the chemicals in the test ampoule could be extracted and subsequently used to test the machine reading. He gave numerous reasons for his conclusion. He testified that he was very familiar with the theory expounded by Dr. Volpe in the Teare case. He further stated that he had searched scientific literature and knew of no effort to prove the theory expounded by Dr. Volpe.
In summary, Dr. Saferstein's testimony was contrary to the testimony of Dr. Volpe in Teare. Dr. Saferstein stated *372 numerous reasons why the Volpe suggestions in Teare were not entirely accurate. Any rebalancing of the instrument would indeed be difficult and would require some expertise. A removal and reinsertion of the ampoule would probably change the reading, and it would be impossible after reinsertion to reproduce the initial results obtained on the breathalyzer.
The Teare testimony stated that the ampoule could be tested as to the volume of acetic acid contained in the vial. Theoretically, this can be accomplished, but to Dr. Saferstein's knowledge this experiment has never been performed. Dr. Volpe said in Teare that a vapor phase chromotograph (v.p.c.) can be used in theory to extract acetic acid from the ampoule. Dr. Saferstein felt that a v.p.c. can be used in theory, but that this concept presents a strong likelihood that a high margin for error exists; all the acid is needed to get an accurate reading and all the acid cannot be removed because of oxidation. In order for a prior used ampoule to be tested, it must be protected in an inert atmosphere. This would necessitate laboratory type conditions; yet, the possibility of contamination in the air always exists.
The long-term standard experimentation inherent in a scientific investigation is absent in this situation. According to Dr. Saferstein: "The first step in scientific reasoning is to propose the theory. The second step is to support that theory with experimental evidence. We have reached the first step in this process, now I wait for the second."
It is precisely because of the elicited testimony of Dr. Saferstein that this court must conclude that the theories espoused by Dr. Volpe in Teare are in their embryonic stage. Before adopting the Teare theories as part of the law governing discovery in breathalyzer matters, it would also be wise for the court to wait for their general acceptance as scientific fact, i.e., their validity must be established by the fundamental scientific method of trial and error.
Sufficient safeguards presently exist to find the breathalyzer test indeed accurate and dependable. The principle *373 of the breathalyzer machine has been established and proven as a scientific fact. State v. Miller, 64 N.J. Super. 262 (App. Div. 1960). The possibility that error exists in the machine's inherent operation is indeed quite remote. The machine does not have to have a universal infallibility to be accepted by the court. See State v. Johnson, 42 N.J. 146 (1964).
This court is satisfied that the present method of checking the ampoule is accurate and drastically cuts down any change of error in the workings of the machine. This court, upon hearing the testimony of Dr. Saferstein and finding the theory in Teare to be speculative, finds no reason to doubt the essential fairness and adequacy of the test. The present method of spot-checking test ampoules has recently been reaffirmed. See State v. Dickens, 130 N.J. Super. 73 (App. Div. 1974); State v. DeVito, 125 N.J. Super. 478 (App. Div. 1973). The test has been deemed to be accurate; to justify a new method of checking based upon nebulous theories would be tantamount to judicial mischief-making.
This court does not find a due process argument. A denial of due process calls for a violation of fundamental fairness. Here defendant based her argument on theories that have not been established by the scientific community itself. Until Dr. Volpe's theories are supported by tangible facts, the argument that a due process question exists is not tenable. N.J.S.A. 39:4:50 et seq. incorporates and provides for a sufficient constitutional means by which a defendant can test the integrity of the breathalyzer machine.
N.J.S.A. 39:4-50.2(b), (c) and (d) provide:
(b) A record of the taking of any such sample, disclosing the date and time thereof, as well as the result of any chemical test, shall be made and a copy thereof, upon his request, shall be furnished or made available to the person so tested.
(c) In addition to the samples taken and tests made at the direction of a police officer hereunder, the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection.
(d) The police officer shall inform the person tested of his rights under subsections (b) and (c) of this section.
*374 The foregoing statutory mandate provides a means consistent with "due process" by which a defendant may verify the test he has consented to by the police authorities. This court finds the statute meets the minimum standard of "due process" and therefore is entitled to a presumption of constitutionality. Male v. Ernest Renda Contracting Co., Inc., 64 N.J. 199 (1974); WHYY, Inc., v. Glassboro, 50 N.J. 6 (1967). To comport with due process the procedures followed need only be fair and reasonable. The test as currently constituted meets such requirements. Such a test, if properly undertaken, violates no constitutional safeguard. State v. Macuk, 57 N.J. 1 (1970).
The State should not be forced to afford the defendant a second chance to check the workability of the machine when defendant has the opportunity under N.J.S.A. 39:4-50.2 (c) to an independent test. Also, since the feasibility of such a retesting has been at best mere scientific theory, the argument that a due process issue exists is without merit. Accordingly, defendant's motion to suppress is denied.