STATE of North Dakota, Plaintiff,

v.

Gerald LARSON, Defendant.

Cr. No. 784.

Supreme Court of North Dakota.

Dec. 22, 1981.

---

Lewis C. Jorgenson, State's Atty., Devils Lake, for plaintiff.

Haugland & Heustis, Devils Lake, for defendant.

ERICKSTAD, Chief Justice.

Upon joint application by the State and the defendant, Gerald Larson, the Ramsey County Court with Increased Jurisdiction, pursuant to Chapter 32–24, N.D.C.C., certified to this Court the following two questions of law for determination:

"1. Is the State of North Dakota required to make a sample of the defendant's breath taken at the time of the breathalyzer examination available to the defendant for independent testing?

"2. Is the State of North Dakota required to make the chemical test ampoule from the breathalyzer available to the defendant for independent testing?"

The trial court answered the foregoing questions in the negative, concluding that the State .is not required to provide a defendant with a sample of his breath taken at the time of a Breathalyzer examination nor to provide him with the test ampoule used in the Breathalyzer. This Court, having concluded that the determination of this case will depend principally upon the construction of law applicable to the questions certified, will proceed to answer those questions.

The parties entered a stipulation of facts including the following: A law enforcement officer, having probable cause to do so, arrested Larson for DWI. The arresting offi-

cer elected to take a breath sample to determine the amount of alcohol in Larson's blood, for which purpose the officer used a Breathalyzer machine. The results of the Breathalyzer test showed that Larson had fifteen-hundredths of one-percent by weight of alcohol in his blood which amount, pursuant to Section 39–20–07, N.D. C.C., raises a presumption that the person is under the influence of intoxicating liquor.[1]

Subsequent to taking the test Larson made a demand upon the State to provide him, for independent testing, a separate sample of his breath obtained by the arresting officer while administering the Breathalyzer test and the test ampoule used in the Breathalyzer. The State was unable to honor either request because no sample of Larson's breath was saved at the time the test was administered and because the test ampoule was discarded immediately following the test. Larson asserts that the State's failure to provide him a breath sample or the test ampoule lessens his ability to impeach the Breathalyzer results and constitutes a violation of his constitutional right to due process. As a remedy, he requests this Court to suppress the Breathalyzer test results.

### QUESTION 1

"Is the State of North Dakota required to make a sample of the defendant's breath taken at the time of the breathalyzer examination available to the defendant for independent testing?"

■ At the time the arresting officer administered the Breathalyzer examination no sample of Larson's breath was taken or saved for independent testing by Larson. The parties have stipulated that the Breathalyzer machine used for the test is not adapted to obtain a separate breath sample

for independent testing but that it is physically possible for a sample of one's breath to be preserved in some suitable vial or container. Larson asserts that the State had a duty to provide him with a breath sample taken at the time the Breathalyzer examination was administered and that the State's failure to do so constitutes a violation of his due process right to a fair trial. We conclude that the State is not required to provide a defendant with an independent sample of his breath taken at the time a Breathalyzer examination is administered.

Section 39–20–02, N.D.C.C., provides:

"*Persons qualified to administer test.* Only a physician, or a qualified technician, chemist, or registered nurse acting at the request of a law enforcement officer may withdraw blood for purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of a breath, saliva, or urine specimen. *The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer.* The failure or inability to obtain an additional test by a person shall not preclude the admission of the test or tests taken at the direction of law enforcement officer. Upon the request of the person who is tested, full information concerning the test or tests taken at the direction of the law enforcement officer shall be made available to him." (Emphasis added.)

Pursuant to the foregoing statute a person upon whom a law enforcement officer has administered a chemical test can have any qualified person of his own choosing administer a test or tests for his own use. If that

---

1. 39–20–07, N.D.C.C., provides in relevant part:
 "*39–20–07. Interpretation of chemical tests.* Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as

shown by chemical analysis of his blood, breath, saliva or urine is admissible. For the purpose of this section:
 * * * * * *
 "(3) A person having, at that time, ten-hundredths of one percent or more by weight of alcohol in his blood shall be presumed to be under the influence of intoxicating liquor."

person desires samples of his breath for independent testing he has the right to acquire those samples himself with the assistance of any qualified person he chooses.

*State v. Bryan*, 133 N.J.Super. 369, 336 A.2d 511 (1974), involved a New Jersey statute with provisions similar to Section 39–20–02, N.D.C.C., permitting a person who has submitted to a Breathalyzer examination to "have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection." The New Jersey statute also provides that the police officer must inform the person being tested of his right to have such samples taken. The Superior Court of New Jersey in *Bryan, supra*, concluding that the statute afforded the defendant due process by permitting her to obtain her own breath samples, stated:

"The foregoing statutory mandate provides a means consistent with 'due process' by which a defendant may verify the test he has consented to by the police authorities. This court finds the statute meets the minimum standard of 'due process' and therefore is entitled to a presumption of constitutionality. To comport with due process the procedures followed need only be fair and reasonable. The test as currently constituted meets such requirements." (Citations omitted.) 336 A.2d at 514.

We conclude, as did the New Jersey Superior Court with regard to the New Jersey statute, that Section 39–20–02, N.D.C.C., which permits a person to obtain his own breath sample, affords him a fair and reasonable opportunity to scrutinize and verify or impeach the results of the Breathalyzer test administered by the law enforcement officer and, thereby, comports with the due process requirements of the Constitution.

We hold that the State is not required to make a sample of the defendant's breath taken at the time of the Breathalyzer examination available to the defendant for independent testing.

## QUESTION 2

"Is the State of North Dakota required to make the chemical test ampoule from the Breathalyzer available to the defendant for independent testing?"

Larson asserts that the State's failure to preserve and provide him the test ampoule used in the Breathalyzer examination violated his constitutional rights of due process as interpreted by the United States Supreme Court in *Brady v. State of Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The United States Supreme Court in *Brady, supra*, held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The petitioner in *Brady, supra*, and a companion were found guilty of murder in the first degree. Prior to trial the petitioner had requested the prosecution to allow him to examine his companion's extra-judicial statements, and several of those statements were shown to him; but one, in which the companion had admitted the actual homicide, was withheld by the prosecution. The court held that the suppression of this confession by the prosecution violated the petitioner's due process rights.

▉ The instant case is distinguishable from *Brady, supra*, in a number of respects, most importantly that the companion's statement in *Brady*, although available, was withheld from the defendant by the State whereas in the instant case the test ampoule used in the Breathalyzer examination was destroyed, as a matter of routine practice, immediately following the administration of the test and was, therefore, unavailable to either the prosecution or the defense. Nevertheless, we agree with the rationale of the U. S. Court of Appeals for the District of Columbia as expressed in *United States v. Bryant*, 439 F.2d 642 (D.C.Cir. 1971), whereupon the court concluded that the *Brady* requirement applies to a case in which evidence requested by the defendant has been lost or discarded by the State:

"Were *Brady* and its progeny applicable only when the exact content of the non-disclosed materials was known, the disclosure duty would be an empty promise, easily circumvented by suppression of evidence by means of destruction rather than mere failure to reveal. The purpose of the duty is not simbly [simply] to correct an imbalance of advantage, whereby the prosecution may surprise the defense at trial with new evidence; rather, it is also to make of the trial a search for truth informed by all relevant material, much of which, because of imbalance in investigative resources, will be exclusively in the hands of the Government." 439 F.2d at 648.

▮ Enumerating on the *Brady, supra,* holding, the Supreme Court in *Moore v. Illinois,* 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), stated:

"The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." 92 S.Ct. at 2568.

In at least three jurisdictions, the courts have held that, under the rule enunciated in *Brady, supra,* the State is required to provide the defendant upon request the test ampoule used in a Breathalyzer examination and that the failure to provide it constitutes a violation of the defendants' due process rights. *State v. Michener,* 25 Or.

App. 523, 550 P.2d 449 (1976); *Lauderdale v. State of Alaska,* 548 P.2d 376 (Alaska 1976); *People v. Hitch,* 12 Cal.3d 641, 527 P.2d 361, 117 Cal.Rptr. 9 (1974).

In each of those cases the defendants established to the satisfaction of the courts, through expert testimony, that the test ampoule used in the Breathalyzer could be scientifically analyzed so as to provide evidence reflecting on the accuracy of the Breathalyzer test results. In each of those cases the appellate court had before it a determination by the trial court, supported by the evidence in the record, that material evidence could result by permitting the defendant to pursue a course of independent inspection and analysis of the test ampoule. Consequently, in each of those cases the element of materiality required by *Brady, supra,* was met.

In the instant case, however, Larson has not demonstrated that the test ampoule, if it were available, could be analyzed to obtain material evidence. There has been no trial in this case, and the record accompanying the certified questions of law is sparse, consisting primarily of the parties' stipulation of facts and a deposition of David Shelton, a Forensic Toxicologist employed by the State Toxicologist office. Shelton testified how the Breathalyzer machine, like the one used in the instant case, measures the percentage level of alcohol in a person's blood through the use of a breath sample.[2] He also testified, through his deposition, with regard to the feasibility of analyzing the test ampoule used in the Breathalyzer examination. His testimony was that it would not be possible to analyze the test ampoule to obtain evidence reflecting upon the accuracy of the test results:

"A. The alcohol is trapped by the solution in the ampoule and the yellow color which is caused by the potassium dichromate disappears in relation to the amount of alcohol that was present in that captured breath sample.
"Q. Now, why is that color important? How is that measured on the Breathalyzer?
"A. The color is determined by the photometric measuring system.
"Q. And you are telling by photometric there is some kind of light measurement device?
"A. That is correct."

2. "A. The set amount of breath collected in the Breathalyzer is then delivered to the Breathalyzer ampoule.
"Q. Can you describe the ampoule, what its use is?
"A. The Breathalyzer ampoule contains chemicals which will react with alcohol from a person's breath within a minute and a half to provide a reliable and accurate reading as to the alcohol concentration of the person's breath at the time of the test.
 * * * * * *

"A. As far as I am concerned to correlate back a later analysis to the amount of alcohol in a person's breath would be absolutely meaningless.

\* \* \* \* \* \*

"A. The ampoule when it is received is a sealed glass vial. You break off the glass vial, the only effective way to save this ampoule would be to seal that glass vial up with a cutting torch or glass blowing type torch which would be impossible. The way the ampoule is shaped has destroyed the neck of the ampoule and would be impossible to draw the glass back out to seal it up.

\* \* \* \* \* \*

"A. Again, the analysis of the components of the ampoule could be redone, the volume could be remeasured, all of these would have absolutely no effect or no value as far as interpreting back a Breathalyzer result or a blood alcohol concentration at the time of the test.

\* \* \* \* \* \*

"Q. Your insistence that it is really not scientifically feasible to keep the test ampoule and run tests as to volume and so forth as we have discussed leads me to ask you this question: Do you then state that there is no way that the test ampoule once used could be tested again or could be measured again?

"A. Oh, not at all.

"Q. To accurately measure volume?

"A. Not at all.

"Q. It could be then?

"A. Yes, sir.

"Q. All right. How about measuring the glass itself or testing the glass itself or optical defects, could that be done again?

"A. If you so desired.

"Q. All right. How about the proportion then of the chemicals contained in the ampoule?

"A. Could do that too.

"Q. But you would need access to the particular ampoule used if you were going to make those tests?

"A. If you were to perform the tests which you have just described there would be no way of determining that back to whether or not an accurate Breathalyzer test had been administered."

There is no evidence in the record rebutting Shelton's testimony. We conclude that Larson has failed to demonstrate that it is possible to analyze the test ampoule to obtain material evidence reflecting upon the accuracy of the test results and that he has, therefore, failed to meet the materiality requirement of *Brady, supra.*

█ The feasibility of analyzing a test ampoule to check the results of a Breathalyzer examination is not so clearly accepted in the scientific community that the courts can take judicial notice of it. *See, Edwards v. State of Oklahoma,* 544 P.2d 60 (Okla.Cr. 1975); *State v. Bryan,* 133 N.J.Super. 369, 336 A.2d 511 (1974). In the foregoing cases, the Superior Court of New Jersey and the Oklahoma Court of Criminal Appeals held that a defendant had no constitutional due process right to have the State provide him with the test ampoule for independent examination. Both courts based their conclusion, at least in part, on the ground that the feasibility of analyzing a used test ampoule was not accepted by the scientific community and that the defendant had not demonstrated that such retesting or analysis could provide material evidence reflecting upon the Breathalyzer test results. In this regard, the Oklahoma Court of Criminal Appeals, in *Edwards, supra,* stated:

"In *Brady,* the Supreme Court, ruling that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ,' in effect qualified the circumstances under which suppressed or missing evidence would be deemed a violation of ones constitutional rights.

\* \* \* \* \* \*

"An examination of the record shows only that the defendant sought to raise the possibility of there existing a defect in the ampoules used; that no effort was made to offer expert testimony as to scientific manner or methods which could be employed in examining the ampoules, or, for that matter, as to the likelihood that the physical nature of the evidence would be found to be of any actual value to defendant. At best, given the inevitable decomposition of a chemical solution within the vial and its alteration through use, defendant's arguments constituted mere speculation on his part, with nothing more advanced to realistically suggest the probability that information of any definite value would be obtained from any recognized or reliable process of re-examination, or that the results of this particular endeavor would have been favorable to the defendant." 544 P.2d at 63.

Defendant Larson, as the defendant in *Edwards, supra*, has, at this stage of the proceedings, entirely failed to demonstrate that the test ampoule could provide material evidence on the issue of his guilt or punishment. Consequently, we hold that the State is not required, under the due process clause as interpreted by *Brady, supra*, to provide Larson with the test ampoule used in the Breathalyzer examination.

 To constitute a violation of the defendant's due process rights under *Brady, supra*, the State must have withheld evidence which was both material and favorable to the defendant. Because *Brady, supra*, involved the suppression of evidence which was still in existence it was a relatively simple matter for the courts to determine whether or not that evidence would have been favorable to the defendant. Unlike the situation in *Brady, supra*, the instant case involves evidence (*i.e.* the test ampoule) which was intentionally, but not maliciously or fraudulently, destroyed and which, for that reason, is unavailable for a determination of whether or not it would have provided favorable evidence for the defendant at trial. The underlying principle of *Brady, supra*, is that a defendant must not be denied a fair trial by the State's withholding of evidence requested by him. However, the withholding of evidence by the State cannot deprive the defendant of a fair trial or violate his due process rights if that evidence is not favorable to the defendant. We believe that where the requested evidence has been destroyed, as in the instant case, the defendant, to establish a violation of his due process rights under *Brady, supra*, must demonstrate a reasonable probability that the destroyed evidence would have been favorable to him. In this regard we agree with the Oregon Court of Appeals in *State v. Michener*, 25 Or.App. 523, 550 P.2d 449 (1976), wherein it stated:

"We deem it apparent that the *Brady* rule requires disclosure of material evidence where a defendant establishes some reasonable possibility, based on concrete evidence rather than a fertile imagination, that it would be favorable to his cause." 550 P.2d at 454.

In *Michener, supra*, the court concluded that the defendants, by introducing video tape evidence showing the defendants had little or no difficulty in performing physical coordination and dexterity tests administered at the time of their arrests, had demonstrated a reasonable possibility that an error could have occurred in the initial Breathalyzer examination and that evidence derived from an analysis of the test ampoule would have been favorable to them.

In the instant case Larson has introduced no evidence which would establish a reasonable probability that an analysis of the test ampoule would have provided material evidence favorable to him at the trial. On the record before us, we hold that the State was not required, as a matter of due process, to make the ampoule from the Breathalyzer examination available to Larson for independent testing.

In accordance with the foregoing opinion, this Court answers both of the certified questions of law in the negative.

PEDERSON and PAULSON, JJ., concur.

VANDE WALLE, Justice, concurring in part and dissenting in part.

Although I agree with the Chief Justice's analysis and answers to the two certified questions of law, I am concerned about the precedent established by considering the questions on their merits. This court has historically held that it will determine certified questions only when the issue will depend principally or wholly upon the construction of the law applicable thereto, and such construction or interpretation is in doubt and is vital or of great moment in the cause. See, e.g., *Scranton Grain Co. v. Lubbock Machine & Supply Co.*, 175 N.W.2d 656 (N.D.1970). The majority opinion, without discussion, states that this court has "concluded that the determination of this case will depend principally upon the construction of law applicable to the questions certified" and proceeds to answer those questions.

I am not convinced that the determination of this case will depend principally upon the construction of law applicable to the certified questions. I assume that the majority opinion does not indicate that a conviction can be had for driving while under the influence of intoxicating beverages only if there is a chemical test which indicates that the defendant was under the influence. This court has previously upheld a conviction for DWI based on evidence other than that of the chemical test. See, e.g., *State v. Glavkee*, 138 N.W.2d 663 (N.D. 1965). Whether or not such evidence is available in this instance is, of course, not known to us because there has been no trial. If such evidence is available it cannot be said that the determination of this case will depend principally upon the construction of law applicable to the certified questions. There is a reason for this court's consistent refusal in the past to consider certified questions unless the determination of those questions will wholly or principally dispose of the issues in the case. The reason is that this court does not issue advisory opinions, and a determination of a certified question that does not wholly or principally dispose of the issues in the case would constitute an advisory opinion. See, e.g., *Meckle v. Hoffman*, 78 N.W.2d 166 (N.D.1956).

I have yet another concern involving the court's issuing an advisory opinion. Section 6 of Article VI of the North Dakota Constitution provides that appeals shall be allowed from decisions of lower courts to the Supreme Court as may be provided by law. The Legislature has determined that an order suppressing evidence may be appealed by the State to the Supreme Court when accompanied by a statement of the prosecuting attorney asserting that the deprivation of the use of the property ordered to be returned or suppressed or of a confession or admission ordered to be suppressed has rendered the proof available to the State insufficient as a matter of law or so weak in its entirety that any possibility of prosecuting the charge to a conviction has been effectively destroyed. Sec. 29–28–07(5), N.D. C.C. Presumably this right of appeal was enacted because any appeal by the State after acquittal, even though the order was found erroneous, would not permit a retrial of the defendant inasmuch as a retrial would twice place the defendant in jeopardy for the same offense contrary to Article 5 of the Amendments to the United States Constitution and Section 12, Article I, North Dakota Constitution. However, the defendant is not given the right to appeal an order denying a motion for suppression of evidence because, if he is convicted, he may raise that issue on appeal from the judgment of conviction. Since the decision in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), evidence obtained by search and seizure violative of the Fourth Amendment to the United States Constitution is, by virtue of the Due Process Clause of the Fourteenth Amendment, inadmissible in State courts. *State v. Matthews*, 216 N.W.2d 90 (N.D.1974). This court has considered many cases since 1961 involving appeals by defendants from judgments of conviction in which motions to suppress evidence were denied prior to or during trial. Since the enactment of Section 29–28–07(5), N.D.C.C. (Ch. 294, Sec. 1, 1977 N.D.Sess. Laws), giving the State the right to appeal from an order suppressing evidence, this

court has heard several such appeals by the State. It is apparent that in most instances it may be argued that the suppression or nonsuppression of evidence is vital to a criminal prosecution. In order that the State may appeal the Legislature has required the prosecuting attorney to file a statement to that effect. My fear is that the majority opinion has now created a new method whereby not only the prosecuting attorney but the defense attorney and the trial judge may request the advice of this court prior to trial. Although I agree with the merits of the issues which the majority opinion announces I must nevertheless dissent to that portion of the opinion which concludes that the certified questions should be answered by this court.

SAND, J., concurs.