## STATE OF FLORIDA v. BURKARD

### Case Nos. 82-172010 TT A02, 82-172004 TT A02, 82-172012 TT A02, 82-177949 TT A02

Palm Beach County Court

December 6, 1983

### APPEARANCES OF COUNSEL

**Lisa Susnar,** Assistant State Attorney, for plaintiff.

**Steven W. Gomberg** for defendant.

### OPINION OF THE COURT

ROBERT V. PARKER, County Judge.

### *ORDER DENYING MOTION TO SUPPRESS*

This matter was presented November 30, 1983, on defendant's motion, filed October 27, 1983, to suppress breathalyzer test results in the above cases.

1. Defendant John Edward Burkard, Jr., was arrested November 13, 1982, and charged with driving while under the influence. A breathalyzer test was conducted that evening which yielded a result in excess of .10 percent.

2. Defendant concedes that he never requested an independent test of his blood alcohol level pursuant to Section 316.1932(1)(F) 3, FLA. STAT. (1982).

3. On June 29, 1983, some seven and one-half months later, defendant filed a demand for discovery, and, when an independent sample of breath was not produced by the State, filed the instant motion to suppress. The State did not produce a separate breath sample because Chapter 10D-42, Florida Administrative Code did not then, and does not at the present time, require that a second sample be taken and preserved for later use.

## I

4. Defendant's first contention is that there is in existence a system, the Indium Crimper, which is generally accepted as reliable in the scientific community for collecting and preserving breath samples for future testing.

5. The Department of Health and Rehabilitative Services approved the Indium Field Sampling Device on January 6, 1978 (Def. Exh. #3), for capturing breath samples for late analysis. How much later? That is the big question.

Defense Exh. #5, a sales brochure published by the company marketing the crimper, claims there is "no appreciable loss" in the sample over a 90-day period. But is this an established and recognized fact in the scientific world, or promotional "huffing and puffing" by a would-be seller of many thousands of dollars of crimping devices in Florida alone?

Defense witness, N. GRAGOR, retired breathalyzer technician formerly with the Metropolitan Dade County Public Safety Department, testified that he has received post-graduate police training in Florida utilizing the crimper but that in all tests run in their schooling the samples tested were recently taken, i.e., taken the same day of the test. He had no experience with testing older samples, certainly no 90-day-old samples, and neither counsel or the witness have directed my attention to any published literature or journals recognized in the scientific community. I thus find that defendant's expert has failed to establish to my satisfaction that there are underlying facts and data which could be reasonably relied upon by men of science to support

Mr. Gragor's opinion under Sections 90.704 and 90.705(1), FLA. STAT.

Defendant contends that our decision should be controlled by the principles recognized by the Colorado Supreme Court in *Garcia v. District Court,* 589 P.2d 924 (Colo. 1979) and by the Supreme Court of Arizona in *Baca v. Smith,* 604 P.2d 617 (Ariz. 1979).

In *Garcia* the Colorado Supreme Court accepted the testimony of defense experts that it was then possible to retest a second sample at a later date under laboratory conditions. However, the Supreme Court of New Mexico in *Montoya v. Metropolitan Court,* 651 P.2d 1260 (N.M. 1982) rejected breath preservation, stating that:

"A review of the testimony concerning the reliability of a retest of a trapped breath alcohol sample shows (a) that any trapping device is less accurate than direct breath testing, and (b) that under all testing conditions observed in Colorado, a ten to fifteen percent difference between direct test results and trapped sample was commonly experienced. Occasionally, especially in private laboratory tests, the differences were even greater, sometimes as much as fifty percent. The trapped sample results were lower than the direct breath test results eighty to ninety percent of the time."

Even in the *Baca* case, the Arizona Supreme Court found that deterioration of a breath sample takes place within *five to seven days.* I therefore question how such a sample, had it been preserved in this case, could have been of any assistance more than a week after the incident, certainly not seven to eight months later. See also the testimony of Professor Borkenstein, the inventor of the breathalyzer machine, to the effect that a sample would only last approximately 30 days at best. Such testimony is summarized by Judge Cohen of this court in the case of *State v. Wilmour Walker,* Case Nos. 77-68583 TT A04, 77-68584 TT A04 and 77-68585 TT A04 decided April 24, 1978. I therefore find that it has not been proved that the state of the art has advanced so that a reliably accurate breath sample may be preserved for more than a few days.

## II

6. Defendant contends that the failure to preserve a breath sample is a denial of due process. The *Brady* rule *(Brady v. United States,* 373 U.S. 83 (1963)) as defined by the Florida Supreme Court in *State v. Sobel,* 363 So.2d 324 (Fla. 1978) (tape of drug transaction—tape inaudible or garbled) does not give an accused an automatic procedural escape hatch where evidence is lost or destroyed unless it is shown that

48

the lost or destroyed material would have been beneficial to the defendant (363 S.2d at p. 328). Even the U.S. Supreme Court has limited *Brady* to situations where the omitted evidence creates a reasonable doubt that does not otherwise exist. *United States v. Agurs,* 427 U.S. 97 (1976). No such showing has been made by the defendant in this case.

7. "Due Process" is an elusive concept and is not further defined in the Constitution; but, as the late Charles Evans Hughes said, "The Constitution is what the judges say it is," and ultimately the judges or the Florida Supreme Court will probably be required to answer this mixed philosophical and legal question of whether Florida peace officers must as a matter of fundamental fairness gather evidence for the defendant by taking a second breath sample in all DWI cases where a breath test is administered.

8. Until corrected by competent appellate authority in this state, I will follow those out-of-state decisions which hold that the state is not required to preserve breath samples as a due process requirement for the reasons set forth by the Maine Supreme Court in *State v. Allen,* 377 A.2d 472 (Me. 1977):

> "In the present context, the governmental 'fair play' conception of the constitutional due process of law may mandate that a police officer shall not interfere with the reasonable opportunity, consistent with the demands of safe custody, of a defendant to procure the reasonable taking of a test which might prove evidence in defendant's behalf . . . Beyond this, however, there is no constitutional duty of a police officer to *affirmatively* assist the defendant in any undertaking to acquire such possibly exculpatory evidence . . . (377 A.2d at p. 475).

So long as a defendant is not refused a reasonable opportunity, at his expense, after demand, to have an independent test taken of his blood alcohol level pursuant to Sec. 316.1932(1)(F)3(1982), I do not consider that any denial of due process has occurred by the officer's failure to take a second breath sample. *Accord, State v. Larson,* 313 N.W. 2d 750 (N.D. 1981) (statutory provision for defendant to obtain blood alcohol test by a qualified person of his own choosing). See also, *State v. Andrews,* 614 P.2d 447 (Kan. 1980); *State v. Bryan,* 336 A.2d 511 (N.J. 1974); and *State v. Canady,* 585 P.2d 1185 (Wash. 1978).

Upon consideration thereof, it is

ORDERED that the motion to suppress breathalyzer results is denied.