STATE of North Dakota, Plaintiff and Appellant,

v.

Timothy RAMBOUSEK, Defendant and Appellee.

Cr. No. 1017.

Supreme Court of North Dakota.

Nov. 28, 1984.

Ronald L. Hilden, Asst. State's Atty., Dickinson, for plaintiff and appellant; argued by Ronald L. Hilden, Asst. State's Atty., Dickinson.

Thomas D. Ewing, Dickinson, for defendant and appellee; argued by Thomas D. Ewing, Dickinson.

ERICKSTAD, Chief Justice.

The State appeals from an order of the County Court of Stark County suppressing

the results of a Breathalyzer test administered to Timothy Rambousek. Rambousek has filed a motion with this Court to dismiss the State's appeal. We deny the motion and reverse the county court's suppression order.

On January 1, 1984, at about 1:40 a.m., Rambousek was stopped by North Dakota Highway Patrolman Steven Kirchoffner while driving on a highway. Officer Kirchoffner administered certain field sobriety tests after which he placed Rambousek under arrest for driving while under the influence of intoxicating liquor. Rambousek agreed to submit to a Breathalyzer test which was later administered by Officer Kirchoffner.

Rambousek filed a motion to suppress the results of the Breathalyzer test on grounds the arresting officer failed to advise him that he had the opportunity to have a qualified person of his own choosing administer an additional chemical test. Section 39-20-02, N.D.C.C., permits a person tested under the direction of a law enforcement officer to have an additional test at his own expense:

> "*Persons qualified to administer test and opportunity for additional test*
> .... The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer with all costs of an additional test or tests to be the sole responsibility of the person charged. The failure or inability to obtain an additional test by a person shall not preclude the admission of the test or tests taken at the direction of law enforcement officer."

At a hearing on the motion, the court elicited the following testimony from Officer Kirchoffner concerning the circumstances involved in this case:

> "THE COURT: ... Officer Kirchoffner, did you in fact advise Mr. Rambousek of his standard *Miranda* advisement?

> "A. No, I did not, your Honor.

> "Q. ... [D]id Mr. Rambousek at any time have the benefit of counsel, from the time that you placed him under arrest until he was placed in incarceration?

> "A. Do you mean was he available to call someone?

> "Q. Yes.. Did he have opportunity to consult with counsel either in person or by phone?

> "A. Yes, he had the availability.

> "Q. Did you inform him of that?

> "A. No, I did not.

> "Q. Subsequent to his arrest, was Mr. Rambousek incarcerated then for detoxification?

> "A. After the test failed, your Honor, yes he was."

The court's order granting the motion reads in pertinent part as follows:

### "I.

"That the Defendant, Timothy Rambousek, ... subsequent to said arrest, remained in the custody of the Stark County Sheriff and Law Enforcement Center, for a period of at least eight (8) hours, for the purposes of detoxification.

### "II.

"That at no time during the course of the arrest of the Defendant, nor during his period of confinement, was the Defendant advised of his constitutional rights, nor was the Defendant advised of his statutory right to have a separate second independent evaluation of his blood alcohol content.

### "III.

"That due to the Defendant's incarceration, and the absence of the Defendant's opportunity to consult with counsel, the Defendant, Timothy Rambousek, was denied any opportunity to be informed of his right to have a second independent evaluation of his blood alcohol content, said evidence relevant to the charge against the Defendant.

"Upon the foregoing Findings, IT IS THE ORDER OF THIS COURT that the results of the breathalyzer test to which the Defendant was subjected are herewith suppressed in their entirety ...."

The State argues that neither Section 39–20–02 nor due process requires that a person tested be informed of the opportunity to have an additional test or tests performed and, therefore, asserts the court erred in granting the motion.

## I.

The first issue we must consider, however, is whether or not the State's appeal from the court's order suppressing evidence should be dismissed.

The State brought this appeal pursuant to Section 29–28–07(5), N.D.C.C., which provides that the State may appeal from an order suppressing evidence "when accompanied by a statement of the prosecuting attorney asserting that the deprivation of the use of the [suppressed evidence] ... has rendered the proof available to the state with respect to the criminal charge filed with the court, (1) insufficient as a matter of law, or (2) so weak in its entirety that any possibility of prosecuting such charge to a conviction has been effectively destroyed." In *State v. Dilger*, 322 N.W.2d 461, 463 (N.D.1982), we held that in addition to filing the statement prescribed by Section 29–28–07(5), that the State is required to explain why the court's order suppressing evidence rendered the available proof insufficient as a matter of law or effectively destroyed any possibility of prosecuting the criminal charge to a conviction. We said, "The prosecuting attorney's explanation should be included either with the statement filed pursuant to § 29–28–07(5), N.D.C.C., or in the State's brief filed for the purposes of the appeal."

In this case the prosecuting attorney filed a statement reciting only the statutory language; however, we are provided an explanation of the reasons for the appeal in the State's reply brief. The reply brief was served and filed by the State in response to an argument made by Rambousek in his brief and by motion that this appeal should be dismissed because the State had failed to comply with the requirements of *State v. Dilger, supra*. Rambousek asserted during oral argument that the explanation by the State of the reasons for its appeal, contained not in the State's brief but in a reply brief filed only after the defendant had raised the issue of the sufficiency of the prosecutor's statement, does not comply with Section 29–28–07(5), and *Dilger, supra*. We disagree.

Our purpose in requiring prosecuting attorneys to support by explanation their statements filed pursuant to Section 29–28–07(5) and subjecting the statements and explanations to review is to compel prosecuting attorneys to evaluate carefully the actual effect of the suppression order to ensure that the legislative intent in prescribing a limited right to appeal is carried out. *State v. Anderson*, 353 N.W.2d 324, 326 (N.D.1984); *Dilger, supra*.

In *State v. Kisse*, 351 N.W.2d 97, 100 (N.D.1984), we said:

"The prosecuting attorney thus may comply with Section 29–28–07(5) either by filing a statement that explains the reasons for the appeal or by filing a terse statement and providing the explanation in *a* brief. Both procedures satisfy the requirements of Section 29–28–07(5) ...." [Emphasis added.]

We believe that the legislative intent in prescribing a limited right to appeal would not be circumvented by allowing the State to present the explanation required by this Court in a reply brief. The prosecuting attorney in this case has been compelled to evaluate carefully the actual effect of the suppression order with respect to the possibility of prosecuting the charge against Rambousek to a conviction. To dismiss this appeal solely on grounds the State's explanation is contained in a reply brief and not in the prosecutor's statement or its initial brief would not safeguard any constitutional right or principle, but rather would ignore the interest of the public in the prosecution of criminal cases in general

and driving while under the influence of intoxicating liquor cases in particular.

In his brief Rambousek has challenged the State's assertion that the court's granting of the motion to suppress has rendered the remaining evidence insufficient as a matter of law or has effectively destroyed the State's case. He argues the State has available to it the eyewitness testimony of the arresting officer and the jailer.

█ It is the State's burden to establish by its explanation that further prosecution without the suppressed evidence would be futile and not merely more difficult. *State v. Anderson, supra; State v. Gawryluk*, 351 N.W.2d 94, 96 (N.D.1984); *State v. Frank*, 350 N.W.2d 596, 598 (N.D.1984). The prosecutor's explanation in this case reads as follows:

"The officer involved in the arrest will testify that the Defendant crossed the centerline causing the officer to drive on the road shoulder in order to avoid a collision. The officer stopped the Defendant who had a 'moderate' odor of alcohol. He was 'hesitant' on the finger-to-nose test but completed it successfully; he was 'unsure' on the heal-to-toe test but completed it successfully; he counted from 20 to 0 but did so 'slowly,' he had 'difficulty' finding his driver's license but produced it; his appearance was 'orderly' and his demeanor was 'polite' and 'co-operative;' his ability to understand instructions was 'good.' Defendant testified at his administrative hearing that he and his girlfriend had been to a New Year's Eve party where he had consumed two or three drinks of Windsor and coke and that he had difficulty remaining awake as well he might at 1:40 a.m.

"If the State is prevented from introducing evidence of a blood/alcohol concentration in excess of .10% by weight (.13% here), there is virtually no likelihood whatsoever that a Stark County jury will convict. Moreover, there may be evidence presented by Defendant of the existence of a brain tumor to dispel what little there is to be concluded from the officer's observations and the physical tests.... If I am prevented by this Court from using the breathalyzer results, I'm dismissing."

█ In determining the appealability of an order suppressing evidence, we evaluate the circumstances of each case to decide whether or not the absence of suppressed evidence will most likely determine the outcome of the trial. *State v. Anderson, supra; State v. Kisse, supra*, 351 N.W.2d at 101. In *Anderson*, we said:

"Prior decisions of this Court illustrate that ... we have placed substantial reliance upon a good-faith evaluation by the prosecutor:

'[O]ur review of the prosecutor's statement and explanation must be guided by the utmost deference for the prosecutor's judgment in evaluating the remaining proof.' *[Dilger, supra; Gawryluk, supra.]*

'The prosecuting attorney is in a better position than either his opponent or this Court to evaluate the State's chances of succeeding at trial with the available evidence.' *[Dilger, supra.]*

'When the prosecutor's determination of the need for suppressed evidence is challenged and is not capable of easy resolution, we will not second-guess the prosecutor by dismissing the State's appeal.' *[State v. Anderson*, 336 N.W.2d 634, 638 (N.D.1983); *Frank, supra*, 350 N.W.2d at 599.]

'We are reluctant to dismiss the State's appeal unless the prosecution's determination of the need for the suppressed evidence is clearly inconsistent with the record or is without foundation in reason or logic.' *[Dilger, supra; State v. Discoe*, 334 N.W.2d 466, 467 n. 1 (N.D.1983); *Anderson, supra; Gawryluk, supra; Kisse, supra*, 351 N.W.2d at 100.]" 353 N.W.2d at 326–27.

We believe this to be an appropriate case to defer to the prosecutor's judgment in evaluating the remaining evidence. Compare *State v. Anderson*, 336 N.W.2d 634 (N.D.

1983), and *Frank, supra,* with *Kisse, supra.* The motion to dismiss is denied.

## II.

Turning to the merits of this appeal, we note that the county court did not clearly specify the rationale for its decision. The court's reasoning is better understood in light of what was said at the hearing on Rambousek's motion to suppress:

"THE COURT: ... In [another] ... decision, I did grant a motion to suppress the evidence upon the grounds that the failure to advise the defendant either of his opportunity to have access to counsel, by that I mean meaningful access either through telephonic communication or in person, or in the alternative to advise the defendant of his right to have the alternate testing, is in my opinion a sufficient basis upon which to suppress the evidence. I too believe that the Supreme Court of North Dakota [in *State v. Larson,* 313 N.W.2d 750 (N.D.1981) ], by referring to the matter of *State vs. Bryan,* a New Jersey decision, used that decision by the ... Supreme Court of the State of New Jersey, as a basis to satisfy a due process challenge to the provisions of mandatory testing. However, while referring to it in its dictum, chose not to adopt for whatever reason, ... the mandatory advisement of the alternative testing. So, that is the basis, that is the Court's experience to date on this matter."

Rambousek argues that when the State "neither advises the defendant of his right to a second test nor gives him the opportunity to consult with counsel before incarceration, the State has effectively suppressed material evidence."

In *State v. Larson, supra,* 313 N.W.2d at 752–53, we held that the State is not required to make available to the defendant for independent testing a sample of the defendant's breath taken at the time of the Breathalyzer test. In noting that Section 39–20–02 allows a person desiring samples of his breath the opportunity to acquire those samples himself, we said:

"*State v. Bryan,* 133 N.J.Super. 369, 336 A.2d 511 (1974), involved a New Jersey statute with provisions similar to Section 39–20–02, N.D.C.C., permitting a person who has submitted to a Breathalyzer examination to 'have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection.' *The New Jersey statute also provides that the police officer must inform the person being tested of his right to have such samples taken.* The Superior Court of New Jersey in *Bryan, supra,* [concluded] ... that the statute afforded the defendant due process by permitting her to obtain her own breath samples ....

\*      \*      \*      \*      \*      \*

"We conclude, as did the New Jersey Superior Court with regard to the New Jersey statute, that Section 39–20–02, N.D.C.C., which permits a person to obtain his own breath sample, affords him a fair and reasonable opportunity to scrutinize and verify or impeach the results of the Breathalyzer test administered by the law enforcement officer and, thereby, comports with the due process requirements of the Constitution." [Emphasis added.]

In *Larson, supra,* whether or not the defendant was *informed* of the opportunity to have an additional test or tests performed by a qualified person of his own choosing was not at issue.

The United States Supreme Court recently held, in *California v. Trombetta,* —— U.S. ——, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), that the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce breath-analysis (Omicron Intoxilyzer) tests at trial. In so holding the Court noted that the evidence to be presented at trial was not the breath itself but rather the Intoxilyzer results obtained from the breath samples. 104 S.Ct. at 2533. The Court also indicated that the State did not destroy the breath samples "in a calculated effort to circumvent the disclosure requirements es-

tablished by *Brady v. Maryland* [373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] and its progeny"; rather, the State acted "in good faith and in accord with their normal practices." *California v. Trombetta*, 104 S.Ct. at 2534 [citing *Killian v. United States*, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961)]. The Court said:

"Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, [citation omitted] ... evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Neither of these conditions is met on the facts of this case." 104 S.Ct. at 2534.

Upon review of the breath-testing instrument and California testing procedures the Court concluded that the chances were extremely low that preserved samples would have been exculpatory. *Id.* Furthermore, the Court concluded that "[e]ven if one were to assume that the Intoxilyzer results in this case were inaccurate and that breath samples might therefore have been exculpatory, it does not follow that respondents were without alternative means of demonstrating their innocence." *Id.* 104 S.Ct. at 2535. The Court noted that, in California, Intoxilyzer results can be impeached by other methods, such as by the introduction of evidence to demonstrate ways in which the machine used to test breath might malfunction, and by cross-examination of the law enforcement officer who administered the test in an attempt to raise doubts in the mind of the trier of fact whether the test was conducted properly. *Id.* However, not every procedural alternative afforded an accused drunk driver is relevant to the due process inquiry:

"To the extent that this and other access-to-evidence cases turn on the underlying fairness of governmental procedures, it would be anomalous to permit the State to justify its actions by relying on procedural alternatives that were available, but unknown to the defendant. *Similarly, it is irrelevant to our inquiry that California permits an accused drunk driver to have a second blood alcohol test conducted by independent experts, since there is no evidence on this record that respondents were aware of this alternative.*" *Id.* 104 S.Ct. at 2535 n. 11. [Emphasis added.]

Notwithstanding what the Court said in *Trombetta, supra,* with regard to the irrelevancy of procedural alternatives unknown to the defendant, and what we said in *Larson, supra,* that Section 39–20–02 afforded the defendant due process by permitting him to obtain his own breath samples, we believe there are other reasonably available means by which Rambousek was able to obtain comparable evidence. North Dakota has enacted provisions to insure the accuracy of the methods and machines used in breath testing, and to insure that only qualified persons are allowed to administer chemical tests. *See* § 39–20–07(5) and (6), N.D.C.C.[1] Rambousek was not without al-

1. Subsections (5) and (6) of Section 39–20–07, N.D.C.C., read as follows:

"5. The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist, and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicologist is authorized to approve satisfactory techniques, devices, and methods of chemical analysis and determine the quali-

fications of individuals to conduct such analysis, and shall issue a certificate to all qualified operators who shall exhibit the certificate upon demand of the person requested to take the chemical test.

"6. The state toxicologist may appoint, train, certify, and supervise field inspectors of breath testing equipment and its operation, and the inspectors shall report the findings of any inspection to the state toxicologist for appropriate action. Upon approval of the methods or devices, or both, and techniques required to perform the tests and the persons qualified to administer them, the state toxicol-

ternative means of demonstrating his innocence. *See* § 39–20–02, N.D.C.C. ["Upon the request of the person who is tested, full information concerning the test or tests taken at the direction of the law enforcement officer shall be made available to him."], and § 39–20–07(9), N.D.C.C. [Notwithstanding any statute or rule to the contrary, the defendant may subpoena, without cost to the defendant, the person who conducted the chemical analysis to testify at the trial on the issue of the amount of alcohol in the defendant's breath at the time of the alleged act.].

We believe as Justice O'Connor has said in her special concurrence in *Trombetta, supra,* 104 S.Ct. at 2535–36: "The failure to preserve breath samples does not render a prosecution fundamentally unfair, and thus cannot render breath-analysis tests inadmissible as evidence against the accused. ... Similarly, the failure to employ alternative methods of testing blood-alcohol concentrations is of no due process concern, both because persons are presumed to know their rights under the law and because the existence of tests not used in no way affects the fundamental fairness of the convictions actually obtained."

Neither Section 39–20–01, the implied consent statute, nor Section 39–20–02, which permits the person tested to have an additional test, purport to require that the person tested be informed of the opportunity to have an additional test administered. The only statutory advisement necessary is that required by Section 39–20–01, namely, that the arresting officer inform the person that "the person is or will be charged with the offense of driving or being in actual physical control of a vehicle ... while under the influence of intoxicating liquor ..." and that the person charged be informed "that refusal of the person to submit to the test determined appropriate will result in a revocation for one year of the person's driving privileges." Thus, we may reason-

ably conclude that the Legislature did not intend to require that the arresting officer inform the person tested of the availability of an additional test. Our conclusion comports with the "general rule" established by other jurisdictions that the police have no duty to inform the person tested of the right to an additional test except where the statute specifically requires that the person be so informed. *See* Erwin, *Defense of Drunk Driving Cases,* § 30.04 (1984). *E.g., Palmer v. State,* 604 P.2d 1106, 1109–10 (Alaska 1979); *State v. Young,* 228 Kan. 355, 614 P.2d 441, 447 (1980); *State v. Miller,* 213 Neb. 274, 328 N.W.2d 769, 771 (1983); *City of Farmington v. Joseph,* 91 N.M. 414, 575 P.2d 104, 106–7 (N.M.Ct.App. 1978).

Although it may be preferable in a case such as this that the arresting officer inform the person tested that he may have an additional test performed, such a failure to inform does not violate Section 39–20–02, nor does it rise to the level of a constitutional denial of due process. Whether or not a person should be so informed is a policy matter within the sphere of the Legislature. To this date the Legislature has indicated a contrary intention as evinced from that part of Section 39–20–02, N.D.C.C., which reads: "The failure or inability to obtain an additional test by a person shall not preclude the admission of the test or tests taken at the direction of law enforcement officer."

Accordingly, the order suppressing the results of the Breathalyzer test administered to Rambousek is reversed and the matter is remanded to the county court for trial. On remand, the Breathalyzer test results should be received in evidence if the foundational requirements of Section 39–20–07(5) are satisfied.

SAND, GIERKE, PEDERSON and VANDE WALLE, JJ., concur.

ogist shall prepare and file written record of the approval with the clerk of the district

court in each county...."