**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Donald J. EUGENE, Defendant and Appellant.**

**Crim. No. 926.**

Supreme Court of North Dakota.

Oct. 31, 1983.

---

* Justice Wm. L. Paulson served as a Surrogate Judge for this case pursuant to Section 27–17– 03, N.D.C.C.

Gail Hagerty, States Atty., Bismarck, for plaintiff and appellee; argued by Gail Hagerty, States Atty., Bismarck.

Bickle, Coles & Snyder, Bismarck, for defendant and appellant; argued by James J. Coles, Bismarck.

ERICKSTAD, Chief Justice.

This is an appeal by the defendant, Donald J. Eugene, from a judgment and sentence of conviction entered upon a jury verdict finding him guilty of the offense of burglary. We affirm.

On July 11, 1982, at approximately 11:33 p.m., an alarm system installed in a Bismarck restaurant known as Caspar's East Forty [hereinafter referred to as Caspar's or restaurant] sounded at the Bismarck police station. Officer Jack Schulz, in response to a dispatch signal, arrived at the restaurant, which was closed for business, at approximately 11:37 p.m. He parked his patrol vehicle and began inspecting the doors and windows of the restaurant.

Officer Schulz testified that he observed, while in the process of his inspection, an individual, later identified as Donald J. Eugene, leaning into the open right rear window of a 1965 Chevrolet Belair automobile. The automobile was parked in the parking lot of a neighboring motel, located directly to the rear of the restaurant, known as the Econ-O-Inn. Officer Schulz testified further that he observed Eugene pull himself out of the window and turn. Officer Schulz then yelled and Eugene "took off at between a run and a jog" away from the automobile toward the Econ-O-Inn. Subsequently, in response to Officer Schulz's order to "stop and come over", Eugene stopped, walked toward Officer Schulz, and properly identified himself to the officer. Officer Schulz testified that he did not observe anyone else, other than Eugene, in the area of the restaurant or the parking lot of the Econ-O-Inn upon and after his arrival at the scene.

Eugene's trial testimony was, in one important respect, contrary to that of Officer Schulz. Eugene did not dispute the fact that he was present in the parking lot of the Econ-O-Inn on the evening of July 11, 1982. He testified, however, that he did not lean into the window of the automobile as Officer Schulz allegedly observed. At trial Eugene recounted the events of the evening and his reason for being near the restaurant. He testified that, prior to his encounter with Officer Schulz, a friend dropped him off at the Ramada Inn, another motel located near the restaurant, so that he could locate another friend, Robert Arthlind, whom Eugene believed was staying there. Upon inquiry at the Ramada Inn, however, Eugene discovered that no registration existed for Arthlind. Eugene testified that he then telephoned his girlfriend, Karen Fredericks, from the Ramada Inn to see if she knew where Arthlind was staying. Fredericks testified that Eugene called her and told her that he was going to look for Arthlind at the Econ-O-Inn.

Eugene testified that, in his effort to locate Arthlind, he left the Ramada Inn, and was jogging through the parking lot of the Econ-O-Inn on his way to the Econ-O-Inn itself, when he heard the shouts of Officer Schulz. Eugene explained to the officer, after being informed of the burglary, that he was not even close to Caspar's, that he had come to see a friend, and then pointed out a pick-up truck in the parking lot which he thought belonged to Arthlind. Eugene alleged at trial that Officer Schulz arrested him because he was "in the area."

The remaining facts are not in dispute. Officer Schulz noticed, while waiting with Eugene for the arrival of other officers, that a gate providing entry to an outside enclosure annexed to the rear of Caspar's was partially open. The enclosed area, surrounded by a fence and partial roof, provides access to a walk-in freezer wherein meat products used by Caspar's are stored. Upon entering the enclosed area, Officer Schulz discovered boxes of meat outside the freezer. A steak knife, used to open a latch on the freezer door handle, and padlock, used to lock the freezer door, were found on a grease barrel just outside the freezer door. The freezer door was open.

Officer Schulz then inspected the automobile into which Eugene was allegedly leaning and discovered, on the right rear seat and floor, packages of prime rib and

ham determined later to be missing from the restaurant's freezer. Also found inside the automobile, underneath the packages of meat, were a hammer and tire iron. The keys to the automobile were also found inside the automobile. Officer Schulz testified that the automobile in which the meat products were discovered is registered to another individual, Gary Potter. An unsuccessful attempt was made by the State to personally serve Potter with a subpoena to appear at Eugene's trial. Eugene testified that he knew Potter "casually."

Several additional officers of the Bismarck Police Department arrived at Caspar's and initiated an investigation of the scene of the burglary. The interior, exterior, and roof of the restaurant were searched. Photographs of the automobile, the meat products, and the enclosed area were taken by Officer Leonard Rohrer and admitted as evidence at Eugene's trial. Potter's automobile was impounded and the meat products found therein were left at the restaurant. Officer Schulz testified that he took custody of the padlock, knife, hammer, and the tire iron found at the scene and placed them in the evidence locker at the Bismarck Police Department. These items were not introduced as evidence by the State at trial. Upon cross-examination Officer Schulz testified that the items were lost. Although testimony was elicited from Officers Schulz and Rohrer concerning police procedures in handling items of potential evidence, no explanation was given for the loss.

Conflicting testimony was elicited at trial concerning the condition of the lost padlock. The owner of the restaurant, Caspar Borggreve, testified that he observed the padlock before it was taken into police custody. He indicated that the padlock was open, not broken, but that it was not necessary to

break or cut that type of "long-neck" padlock to open it. Borggreve recounted an incident involving one of his cooks who opened, without a key, a "defective" padlock previously used on the freezer door. One merely had to "twist it and pull it up." He testified that he discarded that particular padlock and bought a "better, heavier" lock of the same type; however, he was not certain if this new padlock, in use on the evening the restaurant was burglarized, could be opened in the same manner without a key. A key for the padlock was accessible to restaurant employees in the restaurant's kitchen; however, Borggreve testified that the employees' key was in its proper place the following day.

Officer Rohrer testified that he observed that the lost padlock was either bent or pried open. Officer Schulz testified that the padlock was open when he found it and that the bottom "lock mechanism" part of the padlock was not damaged. He could not recall, however, whether or not the "long-neck" part of the padlock was open or pried apart. A photograph taken of the padlock from some distance, introduced by the State and admitted into evidence, does not reveal clearly the condition of the padlock.

Defense counsel argued to the jury at Eugene's trial his concern as to the State's loss of the items taken from the restaurant and automobile and their alleged importance in light of the testimony elicited concerning the condition of the padlock. The jury may have been concerned about this loss also as indicated by its inquiry of the court.[1]

Eugene has raised the following issues in this appeal:

 I. Did the trial court err in denying Eugene's motion for judgment of acquittal and motion for a new trial

---

1. The trial court received a note from the jury during its deliberation of the verdict which reads as follows:

 "Are we permitted to find defendant guilty on the evidence available to us even if we feel that questionable police work may have seriously impaired the defendant's constitutional rights?

"This is a legal question so we must be advised by the court."

The court responded: "Jurors, you have the evidence and the instructions. You must reach your decision based on these."

based upon the loss of physical evidence by the State?

II. Did the trial court err in denying Eugene's motion *in limine* filed to preclude the State from using evidence of defendant's prior convictions?

III. Did the trial court err in granting Eugene only one day of credit for time served prior to his conviction in the instant case?

## I.

### State's Loss of Evidence

Prior to trial, Eugene filed a motion for inspection and discovery pursuant to Rule 16, N.D.R.Crim.P., requesting a wide-ranging assortment of documents and articles, including relevant, tangible objects within the possession, custody, or control of the prosecution. The record does not indicate whether or not the trial court ordered discovery pursuant to the motion.[2] Nor is it evident whether or not the defense made any additional effort to examine the lost items prior to trial. The State was served with a copy of the motion.

At the close of the case, Eugene moved for judgment of acquittal on grounds that the evidence produced at trial was insufficient to sustain a conviction of burglary. A second motion for judgment of acquittal was made on grounds of police misconduct and negligence in the loss of "vital" evidence. Eugene contended that it had been shown at trial that the items would have been exculpatory and, therefore, the case should not go to the jury. The trial court denied the motions for the reason that the weight and materiality of the lost padlock would probably have been in question even if it had been received in evidence and that there was sufficient evidence to present a prima facie case to the jury. Following the jury verdict, Eugene moved for a new trial alleging as a basis therefor several grounds, including the State's loss of evidence. The

trial court indicated that the case "rose and fell on the totality of the circumstances" and denied the motion for a new trial because it was not known whether or not the items lost by the State were exculpatory.

Eugene appeals to this Court contending that the trial court erred in denying the motion for acquittal and motion for new trial because the State's loss of the padlock, knife, hammer, and tire iron violated his constitutional rights of due process as interpreted by the United States Supreme Court in *Brady v. State of Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ In *Brady, supra,* 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218, the Supreme Court announced the rule that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Accord State v. Anderson,* 336 N.W.2d 123, 129 (N.D.1983); *State v. Skjonsby,* 319 N.W.2d 764, 785 (N.D.1982); *State v. Larson,* 313 N.W.2d 750, 753 (N.D. 1981); *State v. Hilling,* 219 N.W.2d 164, 168–170 (N.D.1974). The petitioner in *Brady, supra,* and a companion were found guilty of first degree murder. Prior to trial the petitioner had requested the prosecution to allow him to examine his companion's extra-judicial statements, and several of those statements were shown to him; but one, in which the companion had admitted the actual homicide, was withheld by the prosecution. The Court held that the suppression of this confession by the prosecution violated the petitioner's due process rights.

■ In *Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706, 713 (1972), the Supreme Court indicated that three matters are important in applying the *Brady* rule: "(a) suppression by the prosecution after a request by the defense,

---

2. Amendments to Rule 16, N.D.R.Crim.P., effective September 1, 1983, eliminate the necessity for discovery motions in almost all instances, including discovery of tangible objects, by

providing that discovery proceed by written requests rather than motions. The motion made by Eugene was filed December 20, 1982, prior to this amendment of Rule 16.

(b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." The duty to produce exculpatory materials under the *Brady* rule is not limited to materials in the hands of the prosecutor, but includes material known to the police. *Hilling, supra,* 219 N.W.2d at 169.

■ The Court clarified the *Brady* rule in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), by enumerating three situations in which the *Brady* rule "arguably applies", each involving "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense."

The first situation involves prosecutorial use of perjured testimony where the prosecution knew or should have known, of the perjury. The standard of materiality or review to be applied in such a case is that the conviction "must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs, supra,* 427 U.S. at 103, 96 S.Ct. at 2397, 49 L.Ed.2d at 349–50. This is a strict standard of materiality espousing the view that the use of perjured testimony is fundamentally unfair and a corruption of the truth-seeking function of the trial process. *Agurs, supra.*

The second situation is characterized by a pre-trial request by the defense for specific evidence where the prosecution fails or refuses to disclose the evidence. The *Brady* decision itself presented this situation because it involved a specific request by the defendant for extrajudicial statements made by the defendant's companion. When such a specific request is made and the evidence requested is suppressed by the prosecution, that evidence is deemed material for purposes of the *Brady* rule if disclosure of the evidence "might have affected the outcome of the trial." *Agurs, supra,*

427 U.S. at 104, 96 S.Ct. at 2398, 49 L.Ed.2d at 350.

The third situation discussed in *Agurs, supra,* arises when there has been either a general request for discovery of evidence, or no request is made at all. In this situation evidence not revealed by the prosecution will be held to be material "if the omitted evidence creates a reasonable doubt that did not otherwise exist [when] evaluated in the context of the entire record." *Agurs, supra,* 427 U.S. at 112, 96 S.Ct. at 2402, 49 L.Ed.2d at 355.

The differences between the two standards of materiality applicable in the latter two *Brady* situations, and the dependence for their application upon the specificity of a defendant's request, is designed to implement traditional values inherent in the concept of reasonable notice. *Agurs, supra,* 427 U.S. at 106–07, 96 S.Ct. at 2399, 49 L.Ed.2d at 351.[3]

■ The parties have essentially argued this case along the lines suggested by *Brady* and *Agurs, i.e.,* was the evidence favorable to the defendant, and was the evidence material? Under *Brady, supra,* the State has a duty to disclose material evidence favorable to the accused. Eugene contends, as many jurisdictions have held, that the duty to disclose also operates as a duty to preserve exculpatory evidence. *See, e.g., United States v. Bryant,* 439 F.2d 642, 651 (D.C.Cir.1971); *Lauderdale v. State,* 548 P.2d 376, 382 (Alaska 1976); *Garcia v. District Court, 21st Judicial District,* 197 Colo. 38, 589 P.2d 924, 929–30 (1979); *State v. Clements,* 52 Or.App. 309, 628 P.2d 433, 435–36 (1981).

Eugene concedes that he can only speculate as to the exculpatory nature of the lost items; however, he believes the lost items may have provided direct or circumstantial evidence pertaining to the identity of the person who opened the padlock and/or the means utilized in opening the padlock. He contends, specifically, based upon the testi-

---

**3.** Several jurisdictions, in cases involving the determination of whether suppressed evidence is of sufficient materiality to require its disclosure under *Brady,* have entered upon an initial consideration of whether the defendant made a "specific" or a "general" request for disclosure prior to trial. *See Scurr v. Niccum,* 620 F.2d 186, 190 (8th Cir.1980); *Commonwealth v. Jackson,* 388 Mass. 98, 445 N.E.2d 1033, 1040 (1983).

mony elicited at trial concerning the condition of the lost padlock and Borggreve's testimony concerning the various possible means by which the padlock may have been opened, that disclosure and a subsequent examination of the padlock might have proved to be exculpatory in that (1) it "may have reasonably disclosed that it could have only been opened by a key;" (2) it "may have shown that the lock was opened by the twisting method known to the employees" of the restaurant, or (3) it "may have disclosed fingerprints of some other suspects." As to the remaining items lost by the State, Eugene contends that a "testing [thereof] might have shown fingerprints on such items and might have disclosed whether these items were used in opening the lock." During oral argument, Eugene contended, specifically, that fingerprint analysis performed on the padlock may have disclosed the fingerprints of Gary Potter.

■ In *State v. Larson, supra,* 313 N.W.2d at 753–54, we extended the application of the *Brady* rule to cases wherein evidence requested by the defendant has been lost or discarded by the State: " 'Were *Brady* and its progeny applicable only when the exact content of the non-disclosed materials was known, the disclosure duty would be an empty promise, easily circumvented by suppression of evidence by means of destruction rather than mere failure to reveal.' " *Larson, supra,* (quoting *United States v. Bryant, supra,* 439 F.2d at 648.). We nevertheless acknowledged in *Larson, supra,* that cases involving the loss or destruction of evidence present a quite different problem than that posed in those cases in which suppressed evidence is still in existence.

In *Larson, supra,* we determined that the State's good faith failure to preserve and provide the defendant the test ampoule used in a Breathalyzer examination performed subsequent to his arrest for DWI did not violate *Brady.* We deemed it appropriate in *Larson,* in light of the difficulty involved in applying the elements of *Brady* to evidence intentionally, but not maliciously or fraudulently, destroyed by the State, to adjust the materiality element of the *Brady* rule to require the defendant to "demonstrate that it is possible to analyze the test ampoule to obtain material evidence reflecting upon the accuracy of the test results."

We also adjusted, in *Larson, supra,* the favorability element of *Brady* to require the defendant to demonstrate a reasonable probability that the destroyed evidence, even if material, would have been favorable to him:

"The underlying principle of *Brady, supra,* is that a defendant must not be denied a fair trial by the State's withholding of evidence requested by him. However, the withholding of evidence by the State cannot deprive the defendant of a fair trial or violate his due process rights if that evidence is not favorable to the defendant. We believe that where the requested evidence has been destroyed, as in the instant case, the defendant, to establish a violation of his due process rights under *Brady, supra,* must demonstrate a reasonable probability that the destroyed evidence would have been favorable to him. In this regard we agree with the Oregon Court of Appeals in *State v. Michener,* 25 Or.App. 523, 550 P.2d 449 (1976), wherein it stated:

'We deem it apparent that the *Brady* rule requires disclosure of material evidence where a defendant establishes some reasonable possibility, based on concrete evidence rather than fertile imagination, that it would be favorable to his cause.' 550 P.2d at 454."

*Larson, supra,* 313 N.W.2d at 756.

The test ampoule in *Larson, supra,* was potentially relevant and material because it is an essential part of the Breathalyzer test which gives rise under Section 39–20–07, N.D.C.C., to a presumption of intoxication depending upon the results of the test. We concluded, however, that the defendant failed to demonstrate the feasibility of testing the ampoule to obtain material evidence and, also, failed to introduce concrete evidence which would establish a reasonable probability that the destroyed evidence

would have provided evidence favorable to him at trial.

In *Bryant, supra,* a tape recording of a conversation between the defendants and an undercover narcotics agent regarding the drug transaction at issue was unaccountably lost by the prosecution. Under the circumstances in *Bryant,* the defendants' involvement in the transaction could only be established by proof of what was said during the taped conversation. Thus, the testimony of the narcotics agent was the key to the prosecution's case. Because the tape recording was "absolutely crucial to the question of appellants' guilt or innocence," and a possibility existed that the tape recording "might have been significantly 'favorable' to the accused," the court determined it was "crucial" evidence which the prosecution was obligated to preserve and disclose to the defense, either under *Brady,* Rule 16 of the Federal Rules of Criminal Procedure, or the Jencks Act.

 The materiality of the evidence lost or destroyed in *Larson* and *Bryant* was apparent. We believe the State's duty under *Brady* to preserve evidence arises only after the State knows, or has reason to know, that the evidence is, or is claimed to be, material and exculpatory. *State v. Clements, supra,* 628 P.2d at 436.

 The State contends that evidence of the means utilized in opening the padlock and evidence of who opened the padlock is of questionable relevance because the State was not required to show how the lock was opened. The crime of burglary as defined by our statute does not include, as a necessary element thereof, a "breaking" or "forcible entry". *See State v. Olson,* 290 N.W.2d 664, 673–74 (N.D.1980). Section 12.1–22–02(1), N.D.C.C., reads as follows:

> "A person is guilty of burglary if he willfully enters or surreptitiously remains in a building or occupied structure, or a separately secured or occupied portion thereof, when at the time the premises are not open to the public and the actor is not licensed, invited, or otherwise privileged to enter or remain as the case may

be, with intent to commit a crime therein."

The element of entry for purposes of the offense of burglary may be proved, as it was here, by circumstantial evidence. *Olson, supra.* The evidence presented by the State at trial revealed that the restaurant's freezer was open; meat products from the freezer were missing; these products were discovered in Potter's automobile on the right rear seat; Officer Shulz observed Eugene, minutes after the burglar alarm sounded, leaning into the right rear window of Potter's automobile; the keys to the automobile were in the automobile; and Eugene testified that he was a casual acquaintance of Potter.

There is no indication, in light of the apparent immateriality of the lost items in terms of the State's burden of proof, that the State had any reason to know that the condition of the padlock and other items would be at issue or that Eugene believed them to be exculpatory. Since no fingerprint analysis had been made, the police could not have known whether the fingerprints of Potter or anyone else were on any of the items. An examination of the transcript of the preliminary hearing in this case reveals that Eugene received notice of the existence of the items taken by the police from Caspar's at the October 13, 1982, preliminary hearing. Eugene's trial commenced on February 10, 1983. Yet the record reveals that, except for the broad discovery motion filed on December 20, 1982, no effort was made to gain access to the items prior to trial. By the time the State was made aware of Eugene's contentions concerning the items at trial, the items had already been lost. There is no indication in the record that the police, prior to losing the items, had reason to know that the items might be material and exculpatory to Eugene.

In *Larson, supra,* our implicit consideration of the State's intentional, but good faith, destruction of the test ampoule is apparent. *Brady, supra,* indicates that the prosecution's good or bad faith in suppressing evidence is irrelevant to a determination of whether or not a defendant's due

process rights have been violated. In *Bryant, supra,* the Court determined, after concluding that the prosecution had breached its duty of preservation under *Brady,* that the degree of good or bad faith by the prosecution can be considered in the determination of whether or not a sanction should be imposed. Relying on *United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969), the Court in *Bryant* determined that criminal convictions otherwise based on sufficient evidence would be permitted to stand so long as the prosecution made earnest efforts to preserve discoverable materials.

In *Augenblick, supra,* an accused in a military court martial sought discovery of tape recordings made of the interrogation of a key prosecution witness—the other participant in the crime for which the defendant was subsequently court-martialed and discharged from the service. It turned out that the tapes, which might have aided the defendant by enabling him to impeach the prosecution's witness, had been lost. The Supreme Court determined that there was no credible evidence to indicate that the tapes were suppressed, "presumably meaning bad faith suppression," *Bryant, supra,* but noted that "the Government bore the burden of producing [the tapes] or explaining why it could not do so." The Government's explanation was found adequate; the record contained extensive testimony concerning the recording facilities used and the Navy's routine followed in handling and using such tape recordings, and disclosed that "an earnest effort was made to locate them." Accordingly, the Court found no violation of due process even though the evidence was clearly discoverable under the Jencks Act.

In *Bryant, supra,* the Court concluded that the record before it was inadequate for a determination of whether the sanction sought was appropriate. The case was remanded with directions to "weigh the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial." Many jurisdictions follow this "pragmatic balancing" test in determining whether or not a

due process violation has occurred in a case involving lost or destroyed evidence. *See, e.g., United States v. Picariello,* 568 F.2d 222, 227 (1st Cir.1978); *State v. Amundson,* 69 Wis.2d 554, 230 N.W.2d 775, 789 (1975). *But see State v. Vaster,* 99 Wash.2d 44, 659 P.2d 528, 533 (1983) [good or bad faith of prosecution not considered in determining whether State's failure to preserve evidence violated defendant's due process right; considered only in determining appropriate sanction].

■ We do not believe, in a situation such as that presented in the instant case, where the State may possibly be negligent in the loss of evidence, that a defendant's speculative version of the favorability and materiality of lost evidence must be uncritically accepted and prejudice assessed as if the nature of the evidence were as the defendant claims it might have been. It may be, though we do not now so decide, that intentional conduct, malicious or fraudulent, on the part of the State would warrant the inference that evidence lost or destroyed would have been favorable to a defendant.

Eugene has also failed to support with any evidence his contention that a reasonable probability exists that the items lost by the State would have provided material evidence favorable to him at trial. *Larson, supra.* The record contains only a limited amount of testimony concerning whether or not a meaningful fingerprint analysis could have been made of the sought for evidence. Officer Schulz testified that there was "not necessarily" a likelihood that any fingerprints could have been obtained from the padlock. Nor is there any indication that any employee of Caspar's, who had access to the padlock key or knew of the peculiar manner in which the prior padlock utilized by the restaurant could be opened, was involved in the burglary.

Under the circumstances, the State's loss of the padlock, knife, hammer, and tire iron in the instant case did not result in the denial of Eugene's due process right to a fair trial. Accordingly, the trial court did

not err in denying the motion for acquittal and the motion for a new trial.

## II.

### Admissibility of Eugene's Prior Convictions

Prior to trial, Eugene filed a motion *in limine* requesting of the trial court an order "precluding the use by the prosecution . . . of any reference to or questions upon any previous convictions . . . of the defendant." The day of the trial, prior to selecting the jury, the trial court determined, "in light of the entire Rule 609(a) and (b)", N.D.R.Ev., that evidence of certain prior convictions—two convictions for burglary, one conviction for forgery, and a conviction of two counts of possession of stolen property—would be admissible for the purpose of attacking Eugene's credibility if he chose to testify. A prior negligent homicide conviction was deemed inadmissible. Eugene subsequently testified on his own behalf and on direct examination, prompted by the State's anticipated impeachment, admitted the prior convictions. The trial court's ruling on the admissibility of the prior convictions is assigned as error.

We deem it necessary to address, initially, the State's contention that any error in the trial court's denial of Eugene's motion *in limine* is harmless because the only testimony elicited at trial concerning prior convictions was that on direct examination of Eugene by defense counsel. The State refers us to our decision in *State v. Boushee,* 284 N.W.2d 423, 433–35 (N.D.1979), wherein we stated that the trial judge in that case was not required to make a 609(a) ruling

because the defendant introduced his prior conviction in evidence on direct examination as a matter of trial strategy. In *Boushee, supra,* the defendant contended that the trial court's *refusal* to make an advance ruling on the admissibility of his prior conviction had a significant effect on his trial strategy. He contended he was entitled to such a ruling at a time prior to his being sworn in as a witness. We held that it was not an abuse of discretion for the trial judge to deny the defendant's request for the ruling; however, we deemed it "better policy to make a ruling on the admissibility of a prior conviction, where the witness is the accused, at some time prior to his decision to take the stand because it does have an impact on the trial strategy involved." Advance rulings on admissibility are preferable because "[c]ounsel need to know what the ruling will be on this important matter so that they can make appropriate tactical decisions." 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 609[05], at 609–82 (1982).

We believe the factual circumstances surrounding our statement in *Boushee, supra,* render it inapplicable to the instant case. In this case, an advance ruling was made prior to trial. A defendant does not waive his objection to an adverse ruling on a motion *in limine* by introducing his prior convictions on direct examination. Any rule to the contrary would be inconsistent with our decision to encourage (although not require) advance rulings on the admissibility of prior convictions where the trial court, in its discretion, finds them appropriate.[4] Thus, we proceed to the merits of

---

4. We note that most circuit courts agree that a defendant does not waive objection to an adverse ruling on a motion *in limine* by not testifying at trial. *See* Weinstein's *Evidence* ¶ 609[05], pp. 609–82 to 609–83 (1982). The motion *in limine* may be subject to abuse in that the defendant may not intend to testify at all and yet seek a ruling in the hope of leading the trial judge into reversible error. *See United States v. Cook,* 608 F.2d 1175, 1184 (9th Cir. 1979), *cert. denied* 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980). There can be no abuse where the defendant does testify on direct.

Our conclusion that a defendant does not waive objection to an adverse ruling on a motion *in limine* by bringing out his prior convictions on direct examination as a matter of trial strategy is not inconsistent with our decision in *State v. Jensen,* 282 N.W.2d 55, 68 (N.D.1979). In *Jensen, supra,* we determined that testimony submitted by the State concerning evidence of a prior altercation between the defendant and another which would have been inadmissible under Rule 404(b), N.D.R.Ev., was properly introduced for reasons which included the fact that other acts involved in the altercation were first brought out by the defendant in a light

Eugene's contentions as to the admissibility of his prior convictions.

Rule 609(a), N.D.R.Ev., governs the admissibility of evidence of prior convictions for impeachment purposes. It reads as follows:

"For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting his evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

Rule 609(a) represents a restriction upon the admissibility of prior convictions, as compared to prior North Dakota case law which allowed evidence of any criminal conviction for impeachment purposes. *See Dugas v. Felton,* 249 N.W.2d 215, 216 (N.D. 1976).

▉▉▉ Rule 609(a) divides criminal convictions into two categories: convictions involving "dishonesty or false statement," and convictions for crimes "punishable by death or imprisonment in excess of one year [if] the court determines the probative value of admitting the evidence outweighs its prejudicial effect." Evidence of prior convictions for crimes of "dishonesty or false statement," having the greatest probative value on the issue of veracity, are automatically admissible for impeachment purposes under Rule 609(a)(2). *State v. Anderson,* 336 N.W.2d 123, 125 (N.D.1983).

An examination of the transcript of the hearing on Eugene's motion *in limine* reveals the following colloquy between the parties and the trial court:

"THE COURT: ... Some convictions of the defendant are more than ten years old and therefore are inadmissible as pro-

favorable to him. Our conclusion in *Jensen, supra,* was reached on the basis of the "exceptional" facts presented by that case and included our consideration of additional factors

vided by Rule 609(b) of the North Dakota Rules of Evidence.

"Evidence of other convictions should be excluded upon the basis of Rule 609(a) of the North Dakota Rules of Evidence because the prejudicial effect of such evidence to the defendant would outweigh the probative value of such evidence which would create a danger of unfair prejudice, confusion of the issues, or misleading of the jury. [This was a reading of Eugene's motion *in limine.*]

\* \* \* \* \* \*

"[DEFENSE COUNSEL]: ... The information provided in this case, indicates that some of the convictions of Mr. Eugene are more than ten years old, and we would want all of that—any information on those convictions to be excluded. Also, we feel that there are other convictions that are listed that should also be excluded because it would create an unfair prejudice against Mr. Eugene....

"[STATE]: ... [Defense Counsel] I think has misread Rule 609(a). That Rule provides that those convictions may be admitted involving dishonesty or false statement, regardless of the punishment. I think that you can also exclude the prejudice factor.

"We have copies of judgments which indicate that Mr. Eugene was convicted of forgery in 1979, he was also convicted in 1979 of burglary, he was convicted of two counts of possession of stolen property in 1981, he was also convicted of negligent homicide in 1981. In addition, there was a burglary in 1975 which also we think should be admitted.

"THE COURT: All right. Did all of those result in convictions?

"[STATE]: All resulted in a conviction and a sentence, Your Honor. All were felonies and they were all within the past ten years.

"Certainly forgery and possession of stolen property involves dishonesty or

which we believed offset any prejudice which the defendant may have suffered as a result of admitting the testimony.

false statements, and it is clearly admissible.

"THE COURT: *In light of the entire Rule 609(a) and (b),* I believe prior convictions within a ten year period of time and crimes of dishonesty or false statements, would be admissible and the Court would let you use them. As to the negligent homicide, I don't think that would qualify, so I will prohibit the state from using the negligent homicide conviction.

"The remainder of the convictions that you have mentioned, the Court will permit you to use them for attacking the credibility of the witness should he testify." [Emphasis added.]

Eugene's specific contentions are that the trial court did not make a determination pursuant to Rule 609(a)(1) whether or not the probative value of admitting the evidence outweighed its prejudicial effect. He contends further, in the alternative, that if we deem that a proper determination was made, the trial court abused its discretion in ruling that evidence of Eugene's prior burglary conviction was admissible because burglary is not a crime involving dishonesty or false statement, and because his two prior convictions for burglary were identical to the offense charged.

Eugene has misconstrued Rule 609(a). Under Rule 609(a)(1), evidence of prior convictions need not necessarily be for a crime involving "dishonesty or false statement," and under Rule 609(a)(2) the trial court need not consider the seriousness of punishment or the prejudicial effect of such evidence as it must if prior convictions are offered under Rule 609(a)(1). *Anderson, supra,* 336 N.W.2d at 125–26.

█ We deem it necessary to consider the admissibility of Eugene's prior convictions under Rule 609(a)(2) first, because a conviction which may not automatically be admitted as a crime involving "dishonesty or false statement" may still be admitted in the court's discretion if it meets the criteria of Rule 609(a)(1).

We recently discussed, but left unresolved, what constitutes a crime involving "dishonesty or false statement" for pur-

poses of Rule 609(a)(2). *See Anderson, supra.* At first glance, the question seems easily resolved in light of the common meaning of the term "dishonesty." *See United States v. Papia,* 560 F.2d 827, 845 (7th Cir.1977). We note that "dishonesty" includes, by definition, "any breach of honesty or trust, as lying, deceiving, cheating, stealing or defrauding." *Webster's Third New International Dictionary,* 650 (1971). It does not necessarily follow, however, that this broad definition of "dishonesty" should be employed in delineating the scope of Rule 609(a)(2). North Dakota Rule 609, although taken from the Uniform Rules of Evidence (1974), is quite similar to its counterpart in the Federal Rules of Evidence. This is so because the Uniform Rules of Evidence were conformed to the Federal Rules of Evidence for purposes of uniformity between State and Federal evidence law. Thus, the provisions of each are almost identical. 13 Uniform Rules of Evidence (U.L.A.) pp. 209–13.

In interpreting state procedural rules derived substantially from Federal analogues, we have consistently deemed it appropriate to consider, although we are not bound by, the construction and interpretations placed upon the Federal Rules by the Federal courts. *See State v. Forsland,* 326 N.W.2d 688, 692 (N.D.1982). Federal decisions have interpreted the words "dishonesty or false statement," as contained in the Federal counterpart to Rule 609(a)(2), to apply only to those crimes that bear directly upon the accused's propensity to testify truthfully. *See, e.g., United States v. Ortega,* 561 F.2d 803, 805–06 (9th Cir.1977); *United States v. Hayes,* 553 F.2d 824, 827 (2d Cir.), *cert. denied,* 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed.2d 143 (1977); *United States v. Smith,* 551 F.2d 348, 356–66 (D.C.Cir.1976).

The Federal rationale for this limited applicability of Rule 609(a)(2) is grounded in the complex legislative history of Federal Rule 609, which illustrates that the rule constitutes a carefully considered legislative compromise growing out of a series of vigorous debates in committees and on the floor of both Houses of Congress. *United*

*States v. Jackson,* 405 F.Supp. 938, 940–42 (E.D.N.Y.1975) (Weinstein, J.). *See generally* 3 *Weinstein's Evidence,* pp. 609–02 to 609–54 (1982). Rule 609(a), as it was ultimately enacted, was worked out by a conference committee as a compromise between differing House and Senate formulations of the rule. In its report, the Conference Committee defined crimes of "dishonesty or false statement" as follows:

"By the phrase 'dishonesty and false statement' the Conference means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimes falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." H.R.Conf.Rep. No. 93–1597, 93d Cong., 2d Sess. (1974), U.S.Code Cong. & Admin.News 1974, pp. 7098, 7103, reprinted following Fed.Rules Evid. 609, 28 U.S.C.S.

This language from the Conference Committee Report is the basis for the Federal Court's narrow interpretation of the words "dishonesty or false statement" in Rule 609(a)(2). Possession of stolen property and burglary were not crimes specified by the report. The remaining category, offenses in the nature of *crimen falsi* was defined in *United States v. Smith, supra,* 551 F.2d at 362–63:

"Even in its broadest sense, the term 'crimen falsi' has encompassed only those crimes characterized by an element of deceit or deliberate interference with a court's ascertainment of truth."

State jurisdictions have had occasion to interpret the words "dishonesty or false statement," contained in similar state adaptations of Rule 609(a) of the Federal Rules or Uniform Rules of Evidence, with differing results. *See, e.g., State v. Malloy,* 131 Ariz. 125, 639 P.2d 315, 316–19 (1981) [con-

viction for burglary not admissible under 609(a)(2); "does not necessarily involve element of deceit or falsification"]; *Floyd v. State,* 278 Ark. 86, 643 S.W.2d 555, 556–57 (1982) [burglary and theft are crimes involving "dishonesty"; no discussion]; *People v. Spates,* 77 Ill.2d 193, 32 Ill.Dec. 333, 395 N.E.2d 563, 568 (1979) [conviction for theft admissible under judicially adopted Rule 609(a)(2); limitation to *crimen falsi* offenses too restrictive]; *Hall v. Oakley,* 409 So.2d 93, 96–97 (Fla.Dist.Ct.App.1982) [conviction for petit larceny not admissible; crime must involve "element of deceit, untruthfulness, or falsification"]; *State v. Ellis,* 208 Neb. 379, 303 N.W.2d 741, 751–52 (1981) [conviction for petit larceny not admissible as crime involving "dishonesty" in absence of showing that offense involved deceit or deception]; *State v. Butler,* 626 S.W.2d 6, 11 (Tenn.1981) [shoplifting is crime involving "dishonesty"; no discussion]; *State v. Burton,* 33 Wash.App. 417, 655 P.2d 259, 260 (1983) [theft is crime involving "dishonesty"; no need to examine Federal legislative history when rule not ambiguous]; *State v. Zibell,* 32 Wash.App. 158, 646 P.2d 154, 155–58 (1982) [conviction for possession of stolen property not admissible under 609(a)(2); "not directly probative of whether defendant would or would not testify truthfully"].[5]

■ After examining the history and purpose of Rule 609, we agree with those courts that limit the phrase "dishonesty or false statement" to those crimes that bear directly upon the accused's propensity to testify truthfully, that is, "crimes that involve some element of misrepresentation or other indicium of a propensity to lie and not to those crimes which, bad though they are, do not carry with them a tinge of falsification." *Ortega, supra,* 561 F.2d at 806. As we indicated in *Dugas v. Felton, supra,* 249 N.W.2d at 217, forgery is a crime involving dishonesty or false statement for purposes

---

**5.** Some state courts have given the term "dishonesty" a broad definition which encompasses crimes such as burglary, theft, etc. These decisions do not, however, arise under a state version of the Federal Rule. *See e.g., Frankson v. State,* 645 P.2d 225, 227–29 (Alaska App.1982); *State v. Thomas,* 220 Kan. 104, 551 P.2d 873, 876 (1976); *State v. Ybarra,* 102 Idaho 573, 634 P.2d 435, 442–43 (1981); *State v. Webb,* 309 N.W.2d 404, 413 (Iowa 1981); *State v. Trafton,* 425 A.2d 1320, 1323–24 (Me.1981).

of Rule 609(a)(2).[6] *See also United States v. Field,* 625 F.2d 862, 871 (9th Cir.1980); *State v. Kruse,* 302 N.W.2d 29, 31 (Minn. 1981).

■■■ We conclude that evidence of Eugene's prior convictions for burglary is not an indicium of a propensity toward testimonial dishonesty, and was not automatically admissible under 609(a)(2). *See United States v. Glenn,* 667 F.2d 1269, 1272–74 (9th Cir.1982) ["crimes of violence, theft crimes, and crimes of stealth do not involve 'dishonesty or false statement' "; convictions for burglary and grand theft not admissible under 609(a)(2) ]; *United States v. Seamster,* 568 F.2d 188, 190–91 (10th Cir.1978) [burglary ordinarily considered to be dishonest but not within provisions of Rule 609(a)(2) ]; *United States v. Hayes, supra,* 553 F.2d at 827 ["crimes of force, such as armed robbery or assault, or crimes of stealth, such as burglary" not automatically admissible under Rule 609(a)(2) ].[7]

■■■ Likewise, Eugene's conviction for possession of stolen property is not directly probative of whether he would or would not testify truthfully.[8] We conclude that this conviction is not one which bears directly upon the accused's propensity to testify truthfully and as such is not a crime involving "dishonesty or false statement" for purposes of Rule 609(a)(2).

■■■ Many Federal courts have recognized that when a prior conviction by its definition is not included within Rule 609(a)(2), the prosecution may invoke the automatic admissibility provision by demonstrating that a particular prior conviction rested on facts warranting the "dishonesty or false statement" description. *See United States v. Mehrmanesh,* 689 F.2d 822, 833 n. 13 (9th Cir.1982); *Glenn, supra,* 667 F.2d at 1273; *United States v. Whitman,* 665 F.2d 313, 320 (10th Cir.1981); *United States v. Dorsey,* 591 F.2d 922, 935 (D.C.Cir.1979); *Papia, supra,* 560 F.2d at 847; *Hayes, supra,* 553 F.2d at 827–28. The record here does not reveal, however, that Eugene utilized fraudulent or deceitful means in committing the prior crimes of burglary and possession of stolen property.

■■■ If a prior conviction is not automatically admissible under Rule 609(a)(2) as a crime involving "dishonesty or false statement," it may still be admissible in the trial court's discretion if it meets the criteria of Rule 609(a)(1). Rule 609(a)(1) is absolutely clear and explicit in requiring the trial court, before admitting evidence of a prior conviction, to make a determination that the probative value of the evidence outweighs its prejudicial effect to the defendant. *Anderson, supra,* 336 N.W.2d at 126. The prosecution bears the burden of persuading the court that the probative value of admitting evidence of a prior conviction outweighs its prejudicial effect. *United States v. Lipscomb,* 702 F.2d 1049, 1055,

---

6. Forgery is defined by Section 12.1–24–01(1), N.D.C.C., as follows:

 "A person is guilty of forgery or counterfeiting if, with intent to deceive or harm the government or another person, or with knowledge that he is facilitating such deception or harm by another person, he:

 a. Knowingly and falsely makes, completes, or alters any writing; or

 b. Knowingly utters or possesses a forged or counterfeited writing."

7. The State refers us to several Federal decisions that it asserts have held that burglary convictions are admissible for impeachment purposes, and reflect upon the honesty of a witness. *See United States v. Portillo,* 633 F.2d 1313, 1322 (9th Cir.1980), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1764, 68 L.Ed.2d 241 (1981); *United States v. Oliver,* 626 F.2d 254, 264 (2d Cir.1980); *United States v. Brown,* 603 F.2d 1022, 1028 (1st Cir.1979); *United States v. Oaxaca,* 569 F.2d 518, 526–27 (9th Cir.), *cert. denied,* 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978); *United States v. Hawley,* 554 F.2d 50, 53, n. 7 (2nd Cir.1977). These decisions are irrelevant to our discussion of Rule 609(a)(2) inasmuch as they involve the admissibility of prior burglary convictions under Rule 609(a)(1).

8. Possession of stolen property is a consolidated theft offense defined in Section 12.1–23–02(3) of the North Dakota Century Code as follows:

 "A person is guilty of theft if he:

 \* \* \* \* \* \*

 "3. Knowingly receives, retains, or disposes of property of another which has been stolen, with intent to deprive the owner thereof."

1063 (D.C.Cir.1983); *Accord Hayes, supra,* 553 F.2d at 828; *United States v. Mahone,* 537 F.2d 922, 929 (7th Cir.), *cert. denied,* 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). The defendant is then permitted to rebut the prosecution's presentation, pointing out the potentiality for unfair prejudice from admission of the evidence. *Mahone, supra.*

Eugene contends that the trial court erred in admitting evidence of his prior convictions because no determination was made, as required by Rule 609(a)(1), that the probative value of the evidence outweighed its prejudicial effect. We do not agree. The record reveals that the trial court relied on "the entire Rule 609(a) and (b)" as its basis for admitting evidence of Eugene's prior convictions.

■■■■ As we indicated in *Anderson, supra,* the Seventh Circuit Court of Appeals in *Mahone, supra,* urged trial judges to make determinations exercising their discretion under Rule 609(a)(1) after a hearing on the record and to explicitly find whether or not the prejudicial effect of the evidence to the defendant will be outweighed by its probative value. Some of the factors which the *Mahone* Court indicated should be considered by the trial judge in making the determination include:

"(1) The impeachment value of the prior crime.

"(2) The point in time of the conviction and the witness' subsequent history.

"(3) The similarity between the past crime and the charged crime.

"(4) The importance of the defendant's testimony.

"(5) The centrality of the credibility issue." 537 F.2d at 929.

This list does not exhaust the range of possible factors that a trial judge may consider, but it does outline the more basic concerns relevant to the balancing under Rule 609(a)(1). *See United States v. Jackson,* 627 F.2d 1198, 1209 (D.C.Cir.1980). We also express our preference, as did the Seventh Circuit in *Mahone,* that trial judges explicitly articulate their balancing process on the record to avoid the unnecessary raising of the issue of whether the judge has meaningfully invoked his discretion under Rule 609(a)(1). This will simplify this Court's task of determining whether or not the trial judge followed the strictures of Rule 609(a)(1) in making the balancing determination.

■■■ While the trial court was not as explicit as it could have been in identifying and weighing the relevant indicia of probative value and prejudice, we cannot say, in view of the record, that the trial court failed to meaningfully exercise the discretion given it by Rule 609(a)(1). The trial court's ruling permitting the admission of evidence based "[i]n light of the entire Rule 609(a)" indicates implicitly that, in line with the rule, it weighed the probative value of the evidence against the prejudicial effect to Eugene. *Mahone, supra.* The record before the trial court consisted of argument by defense counsel as to this very matter. Furthermore, Eugene's motion *in limine* containing Eugene's contentions concerning the prejudicial effect of the prior convictions was read aloud by the trial court in the presence of the parties at the outset of the hearing.

■■■ Eugene contends that the trial court abused its discretion in allowing admission of evidence of his prior convictions for burglary because those convictions were for a crime identical to the crime charged. We find no abuse of discretion. The prior burglary convictions were for a crime which, although not involving "dishonesty or false statement" for Rule 609(a)(2) purposes, still reflected adversely, in a general sense, on Eugene's honesty and integrity. *See United States v. Brown,* 603 F.2d 1022, 1029 (1st Cir.1979); *United States v. Oaxaca,* 569 F.2d 518, 527 (9th Cir.), *cert. denied,* 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978). As such they were relevant to the question of Eugene's credibility which, in light of the contradictory testimony of Eugene and Officer Schulz, was a key issue in the case.

Prior convictions are not inadmissible per se on the issue of credibility merely because the offense involved is identical to that for which the defendant is on trial. *See United States v. Callison,* 577 F.2d 53, 55 (8th Cir.), *cert. denied,* 439 U.S. 873, 99 S.Ct. 209, 58 L.Ed.2d 187 (1978); *Oaxaca, supra; United States v. Ortiz,* 553 F.2d 782, 784 n. 6 (2d. Cir.), *cert. denied,* 434 U.S. 897, 98 S.Ct. 277, 54 L.Ed.2d 183 (1977). As was stated by the Second Circuit Court of Appeals in *Ortiz, supra:* "The fact that the prior conviction is for the same offense requires particularly careful consideration of all the factors by the trial judge before permitting its use, but does not mandate its exclusion."

We find no error on the part of the trial court in admitting the evidence of Eugene's prior convictions.

### III.

### *Credit for Time Served*

Eugene alleges that the trial court erred in granting him only one day of credit for time served prior to his sentencing in this case. We find no merit in this contention.

On July 11, 1982, Eugene was arrested in connection with the police investigation of the burglary of Caspar's and was held in the Burleigh County Jail until the following day when he was released on bond. On August 23, 1982, Eugene's suspended sentence of one year for convictions of possession of stolen property and negligent homicide in Morton County was revoked. His bond on the burglary charge was revoked on August 24, 1982. On that same day, he was taken to the State Hospital for an evaluation ordered pursuant to the revocation, and remained there until September 23, 1982, after which he was transferred to the State Penitentiary.

On February 23, 1983, Eugene was sentenced to four years imprisonment on the burglary conviction, to commence that day, and received credit for the one day he was incarcerated in the Burleigh County Jail. Eugene then filed a motion to correct, as a clerical mistake, the credit received for time served, which he contended ought to have included the period of time from September 23, 1982, to March 9, 1983, the date of the criminal judgment. The court denied the motion.

Eugene contends it was the intent of the court that the sentence run concurrent "in all ways" with the sentence he was serving as a result of his probation revocation. The record is clear, however, in revealing that the sentence imposed was "to commence [on February 23, 1983]," and only one day of credit for time served was contemplated by the sentencing judge.

Section 12.1–32–02(2), N.D.C.C., clearly states in pertinent part:

"Credit against any sentence to a term of imprisonment shall be given by the court to a defendant *for all time spent in custody as a result of the criminal charge for which the sentence was imposed, or as a result of the conduct on which such charge was based.*" [Emphasis added.]

Credit for time served, therefore, is appropriate when a defendant's pretrial incarceration is due to his inability to make bail, but is inappropriate for time served in connection with wholly unrelated charges based on conduct other than for which the defendant is ultimately sentenced.

The trial court properly applied the statute in denying Eugene's motion. During the period between August 24, 1982, and February 23, 1983, Eugene was incarcerated pursuant to an order revoking probation and order of commitment imposed in connection with his prior convictions for crimes completely unrelated to the burglary charge. During the period from July 11, 1982, to July 12, 1982, Eugene was held as a direct result of the burglary charge. He has been given appropriate credit for time served.

Eugene relies on several decisions of the Court of Appeals of Michigan, in requesting this Court to undertake a "liberal" reading of the credit statute. *See, e.g., People v. Potts,* 46 Mich.App. 538, 208 N.W.2d 583 (1973). We do not believe, however, that we may disregard the clear

language of the statute. We find no error in the trial judge allowing only one day of credit for time served in the instant case.

In accordance with the foregoing opinion, this Court affirms the judgment and sentence of the trial court.

VANDE WALLE, SAND and PEDERSON, JJ., and PAULSON,* Surrogate Justice, concur.