**CITY OF BISMARCK, Plaintiff and Appellee,**

v.

**Fred BAUER, Defendant and Appellant.**

**Crim. No. 1221.**

Supreme Court of North Dakota.

June 24, 1987.

Paul H. Fraase, Asst. City Atty., Bismarck, for plaintiff and appellee; argued by Paul H. Fraase.

Vinje Law Firm, Bismarck, for defendant and appellant; argued by Ralph A. Vinje.

ERICKSTAD, Chief Justice.

Fred Bauer appeals from the judgment entered by the Burleigh County Court on October 21, 1986, in which he was found

guilty of driving under the influence of alcohol in violation of Bismarck Traffic Code, Section 35–148, following trial by jury. We affirm.

Bauer was arrested by Officer Erin Wooten of the Bismarck Police Department on April 3, 1985, and was charged with driving under the influence of alcohol. At the police department, Bauer performed physical tests and submitted to a breath test which were videotaped.

At his arraignment on April 4, 1985, Bauer pled not guilty. At his trial in municipal court on August 1, 1985, the City presented testimony from Brian Wolf, a private security guard who witnessed Bauer driving prior to his arrest, and Officers Wooten and Steve Helgeson. The videotape of Bauer performing physical tests and his intoxilyzer test results were offered by the City and were received by the municipal court. Bauer testified in his defense. The municipal court found him guilty, and Bauer filed a written notice of appeal on August 6, 1985. Prior to trial in county court, the videotape of Bauer was apparently inadvertently erased.

Bauer moved in county court to dismiss the complaint against him on February 20, 1986. The motion was premised on the contention that the inadvertent erasure of the videotape constituted destruction of exculpatory evidence. Bauer's attorney, Ralph A. Vinje, in his affidavit, states that in his "opinion at the time of viewing the video tape that the video tape as evidence would be very beneficial to Fred Bauer" and "that the video tape portrayed test results far more favorable than the descriptions given of those same results by the police officers who observed them." Mr. Vinje admitted "that the video tape did portray Fred [Bauer] as being somewhat confused" and "not totally coordinated," but qualified Bauer's confusion and disorientation as "totally in character with Fred Bauer as he would appear to the jury."

The City resisted the motion to dismiss and filed with its brief an affidavit by Lieutenant Harlan Lyson that explained the videotape's erasure. Lieutenant Lyson states that "the notice of appeal was not delivered from the municipal court to the police records as had been the practice in the past or else the records department failed in their paperwork to indicate that certain cases had been appealed so that the videotape could be preserved." Bauer does not allege that the police erased the videotape as an intentional effort to destroy exculpatory evidence. The county court, relying upon the affidavits and briefs filed, denied the motion. The court consolidated Bauer's motion with a similar motion by Dean Lutz and in its memorandum opinion said, in part:

"In both cases, the City contends the evidence is inculpatory in nature and would have been offered as evidence of the offense by the prosecution. In effect, there is a significant issue as to whether or not these cases deal with exculpatory evidence in the pure sense. The information provided to the Court indicates that the tapes would have contained significant evidence of alcohol impairment. (In City -v- Lutz, Officer Kenner testified that Lutz may have performed one of the physical tests somewhat better the second time on video tape than he did out on the highway. At the same time, the officer testified without objection that the tape evidence taken as a whole would lead to the conclusion the defendant was under the influence.) I reviewed the various cases cited by counsel, and conclude that the reasoning of the North Dakota Supreme Court in *State -v- Eugene* [340 N.W.2d 18 (N.D. 1983)] is applicable to the present case. *Eugene* also dealt with the unintentional loss of physical evidence prior to trial. The Court, referring to its earlier decision in *State -v- Larson*, 313 NW2d 750 (ND 1981), required a showing of a 'reasonable probability' that the destroyed evidence would have provided favorable evidence to the defendant. At 28, the Court stated 'We do not believe, in a situation such as that presented in the instant case, where the State may possibly be negligent in the loss of evidence, that a defendant's speculative version of the favorability and materiality of lost evidence must be uncritically accepted

and prejudice assessed as if the nature of the evidence were as the defendant claims it might have been.'

"I am not satisfied, based on what has been presented in these cases that a reasonable probability exists that the loss of the tapes has operated to deprive the defendant of material favorable evidence."

A jury trial was held in county court on August 7, 1986. The City presented the testimony of two private security officers, Wolf and Jeff Haase, and Officer Wooten. Apparently, Bauer's intoxilyzer test results were unavailable. The jury found Bauer guilty. Each juror was polled and each affirmed the guilty verdict although one juror was hesitant. After the jury was dismissed, the hesitant juror contacted Bauer's attorney and Judge Burt L. Riskedahl "to let each of them know that guilty was not my true and correct verdict." The juror explained in her affidavit that "[a]t the time I agreed to a guilty verdict I was tired physically and was mentally exhausted from receiving verbal abuse and criticism from other jurors."

On October 21, 1986, Bauer filed his motion for mistrial arguing that the jury failed to reach a unanimous verdict in light of the juror's affidavit.

On October 24, 1986, the county court denied Bauer's motion. Bauer presents two issues on appeal:

## I

Whether or not the county court erred when it denied Bauer's motion to dismiss based on the inadvertent erasure of Bauer's videotaped performance of physical tests.

## II

Whether or not the county court erred when it denied Bauer's motion for a mis-

trial based upon an attempt by a juror to impeach her earlier polled verdict of guilty prior to the entry of judgment.

A determination of the first issue involves a determination of whether or not the erasure of Bauer's videotaped performance of physical tests constitutes suppression of apparent exculpatory evidence resulting in a violation of due process.[1]

The United States Supreme Court in *Brady v. State of Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215, 218 (1963), announced the general rule "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Accord *State v. Eugene*, 340 N.W.2d 18 (N.D. 1983); *State v. Anderson*, 336 N.W.2d 123 (N.D.1983); *State v. Larson*, 313 N.W.2d 750 (N.D.1981); *State v. Hilling*, 219 N.W.2d 164 (N.D.1974).

The Supreme Court in *United States v. Agurs*, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342, 351 (1976), expanded *Brady* to require that "if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made."

The Supreme Court, however, had not "squarely addressed the government's duty to take affirmative steps to preserve evidence on behalf of criminal defendants" until *California v. Trombetta*, 467 U.S. 479, 486, 104 S.Ct. 2528, 2533, 81 L.Ed.2d 413, 420 (1984).[2] The Court explained the State's duty to preserve potentially exculpatory evidence as follows:

"Whatever duty the Constitution imposes on the States to preserve evidence, that

1. As Bauer has either failed to secure or has failed to have a transcript transmitted to our Court of the trial in county court we are unable to consider the effect of the erasure in light of the other evidence. As it is the appellant's responsibility to order a transcript under Rule 10(b), N.D.R.App.P., he must suffer the consequences of failing to order or failing to have the transcript transmitted.

2. We initially followed *Trombetta* in *State v. Rambousek*, 358 N.W.2d 223, 230 (N.D.1984), where we concluded that a driver charged with driving under the influence did not have a due process right to be advised of the opportunity to have an additional test for intoxication administered.

duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, *see United States v. Agurs*, 427 U.S., at 109–110, 96 S.Ct., at 2400, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." [Footnote omitted.] 467 U.S. at 488–89, 104 S.Ct. at 2534, 81 L.Ed.2d at 422.

We believe the rule stated in *Trombetta* is consistent with what we said in *State v. Eugene*, 340 N.W.2d at 27, that "the State's duty under *Brady* to preserve evidence arises only after the State knows, or has reason to know, that the evidence is, or is claimed to be, material and exculpatory."

■ Our analysis under *Trombetta* and *Eugene* begins with the need to determine whether or not the videotape of Bauer performing physical tests possessed an exculpatory value that was apparent to the prosecution before the tape was erased. Bauer's attorney conceded in essence in oral argument and in his affidavit that his view that the videotape was exculpatory is subjective. His affidavit does not establish that it should have been apparent to the prosecution that the tape was material evidence favorable to Bauer prior to its erasure. Notice was not given to the prosecution of the defendant's view of the exculpatory value of the videotape until the erasure was discovered. The fact that Bauer was found guilty in municipal court where the videotape was offered in evidence by the City, received by the court, and was part of the record upon which the court found the defendant guilty, suggests to us that the City did not perceive the videotape to be exculpatory. We conclude that under *Trombetta* and *Eugene* reversal would not be appropriate in this case because the State's duty to preserve the videotape as apparently or probably exculpatory evidence did not arise. We find no violation of the due process clause of the Fourteenth Amendment of the United States Constitu-

tion or the due process clause of Article I, Section 12, of our state Constitution.

The second issue is whether or not the trial court erred when it denied Bauer's motion for a mistrial. Bauer argues, without citing case or statutory authority, "[t]he fact that the recantation was prior to entry of judgment should have compelled the judge to declare a mistrial for lack of a unanimous verdict." He admits that the juror's affidavit is insufficient to require a new trial. Bauer's position is that the juror should be able to recant her earlier polled verdict of guilty when done prior to entry of judgment.

Rule 31(a), N.D.R.Crim.P., provides that "[t]he verdict must be unanimous." Rule 31(d), N.D.R.Crim.P., provides:

"Whenever a verdict is returned and before it is recorded the jury must be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

■ Generally, a juror may not impeach the verdict as to matters that inhere therein after the jury has been discharged. *See Blake v. Cich*, 79 F.R.D. 398, 402 (D.Minn. 1978); *Vizzini v. Ford Motor Co.*, 72 F.R.D. 132, 136 (E.D.Pa.1976), *rev'd on other grounds*, 569 F.2d 754 (3d Cir.1977).

Rule 606(b) of our Rules of Evidence provides that:

"a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the verdict of the jury was arrived at by chance."

■ In this case, the juror's affidavit does not attest to extraneous prejudicial

information, outside influence or that the verdict was arrived at by chance, but rather attests to emotional stress occurring during the jury's deliberations that under Rule 606(b) is clearly not a proper subject for consideration. *See Simmons First Nat'l Bank v. Ford Motor Co.*, 88 F.R.D. 344 (E.D.Ark.1980).

We recently espoused the important public policy considerations preventing examination of the mental processes of jury deliberations in *Andrews v. O'Hearn*, 387 N.W.2d 716, 719–23 (N.D.1986). In *Andrews*, 387 N.W.2d at 720, we said:

> "It is essential to our system of justice that the jury be unfettered in its discussions; the prospect of continued reexamination and subsequent justification of the jury verdict would create a substantial chilling effect upon the jurors and hinder free and open discussion. *See, e.g., McDonald v. Pless*, 238 U.S. 264, 267–268, 35 S.Ct. 783, 784, 59 L.Ed. 1300, 1302 (1915). Post-verdict examination of the content, method, and manner of the jury's internal decision-making process would 'place every verdict at the mercy of jurors and invite tampering and harassment.' Notes of Advisory Committee on Rule 606(b), F.R.Evid., citing *Grenz v. Werre*, 129 N.W.2d 681 (N.D. 1964). As recently stated by the United States Supreme Court,
>
> > 'once the jury has heard the evidence and the case has been submitted, the litigants must accept the jury's collective judgment. Courts have always resisted inquiring into a jury's thought processes [citing *McDonald v. Pless* and Rule 606(b)]; through this deference the jury brings to the criminal process, in addition to the collective judgment of the community, an element of needed finality.' *United States v. Powell*, 469 U.S. 57, 67, 105 S.Ct. 471, 478, 83 L.Ed.2d 461, 470 (1984)."

What we said in *State v. Bergeron*, 340 N.W.2d 51, 57 (N.D.1983), is equally applicable:

> "Rule 606(b), NDREv, prohibits testimony regarding certain conduct by the jurors which has no verifiable outward manifestations. As a matter of public policy, our judicial system could not tolerate the harassment and intimidation which could result if unrestrained post-trial inquisition of jurors were permitted. *State v. Sheldon, supra*, 301 N.W.2d at 615. Absent outward manifestations of a verdict arrived at by chance, extraneous prejudicial information, or improper outside influence, a juror will not be permitted to impeach a verdict."

In this case as in *Bergeron*, each juror was polled and each acknowledged that the verdict represented the juror's decision. It is immaterial that the juror who sought to recant her verdict sought to do so prior to the imposition of the sentence, but following the discharge of the jury.

For the reasons stated herein we conclude that the county court properly refused to allow the juror to impeach her earlier polled verdict of guilty.

Accordingly, the judgment of the Burleigh County Court is affirmed.

GIERKE, VANDE WALLE, LEVINE and MESCHKE, JJ., concur.